No. 7946.

INSURANCE OIL TANK COMPANY vs. JOHN H. SCOTT.

A suit brought in the name of a corporation without designation of any officer, will stand when, on trial of the Exception taken on that point, it is shown that the action was instituted by the President with the approval of the Board of Directors.

A corporation is entitled to have its trade-mark as well as a private individual, and may sue for its infringement.

The infringer cannot justify his wrongful act by showing that the plaintiff has violated some general law of the State, not affecting his right to have a trade-mark, but on a different subject.

In the United States, trade-marks may be patented, and when the word *patented* is put on the label of the article sold, though the merchandise itself is not patented, but the word is used in reference to the trade-mark and not for the purpose of deceiving the public, the owner of the trade-mark will not be disentitled.

The words "Insurance Oil" are a legal trade-mark.

A trade-mark is not necessarily defective because it does not indicate the origin or ownership of the article.

The seller is as much entitled to protection in his trade-mark when his goods are manufactured by others under his orders and directions, as when he is himself the manufacturer.

APPEAL from the Fourth District Court for the parish of Orleans. *Houston, J.*

## Leovy & Kruttschnitt for Plaintiff and Appellant:

First—"The leading principle of the law of trade-marks is, that the manufacturer or merchant who has produced or brought into market an article of use or consumption that has found favor with the public, and who, by affixing to it some name, device or symbol, which serves to distinguish it as his, and to distinguish it from all others, has furnished his individual guaranty, of its value, shall receive the reward of his skill, and shall not be deprived thereof by infringement or imitation." 24 An. p. 96; Upton on Trade-Marks, p. 97; 6 Otto, p. 245; 1st Cooley on Torts, 359; American Trade-Mark Cases, pp. 479, 539 and 624.

Second—Any purely arbitrary or fanciful name, device or designation may be used, provided the name selected is not a word in common use, to designate or describe the quality or nature of the article. Such words cannot be exclusively appropriated by any one, as "nourishing" applied to a drink; nor can the name of a place be applied as a trade-mark, because others may see fit to do the same business at the same place. But such names as "Charter Oak Stoves," "Congress Water," "Bethesda Water," Ethiopian" Stockings, "Grenade Syrup," "Excelsior Soap," "Sunlight Oil," "Daylight Oil," "Insurance Oil," are purely fanciful and arbitrary names, and are good trade-marks. 1st Cooley on Torts, p. 362; Browne, Trade-Marks, Sects. 236, 274; American Trade-Mark Cases, pp. 530, 624, 479; Coddington's Digest, Trade-Marks, Sec. 680 et seq., 1039; 10 Reporter, 809.

Third—The trade-mark protects the merchant or seller of an article, as well as the manufacturer. 6 Otto, 245; 24 An. 297; Am. Trade-Mark Cases, pp. 45, 166, 573, 627; Browne on Trade-Marks, Sects. 35, 62; Upton, Trade-Marks, p. 97; Coddington's Digest, Sects. 7, 10, 11, 14.

Fourth—Mere symbols or devices, or fancy and unmeaning words, by use and association, indicate origin, and thereby become legal trade-marks. Such words as "Excelsior," "Climax," "Empire," "Charter Oak," have been decided to be good words for this purpose. Browne, Trade-Marks, Sec. 150; American Trade Mark Cases, p. 736; 13 Wall. 322; 101 U. S. S. C. p. 51.

Fifth—Complainant will be protected even where there is technically no trade mark. 6th Otto, 245; 96 U. S. 245; 9th Reporter, 603; 33 Md. 252; 10 Reporter, 154; 11 Reporter, 241; 45 Cal. 467.

Sixth—Though a fraudulent trade-mark will not be protected, an innocent mistake will deprive no one of remedy under the law. Where there is no motive for fraud in the owner of the trade-mark, and "no intention to deceive," an injunction will issue. High on Injunctions, Sec. 674; Coddington's Digest, Trade-Mark Cases, Secs. 548, 561, 565, 570, 571; American Trade-Mark Cases, pp. 282, 559; 39 Conn. 450.

And when the record shows the objection is removed, and another writ of injunction could be issued, the injunction will not be set aside. 18 An. 111; 21 An. 324; 22 An. 207, 464; 23 An. 171; 25 An. 222; Louque's Dig. 315.

Seventh—The admissions and the testimony show that the plaintiffs were legally incorporated under the Acts of 1855, No. 131, and of 1868, No. 73, amending the same, and are properly

in court. Besides, the existence of a corporation *de facto* cannot be inquired into collaterally. 11 Reporter, 110, and authorities there cited; 4 Otto, 104; 2 W. & S. 190.

Eighth—While exemplary or punitory damages are not given for violations of trade-marks, a sufficient sum will be allowed to cover all losses;—that, by injury to the reputation of the article sold under counterfeit trade-marks; that, for depreciation in price, caused by competition, and loss to complainant of the money made by defendant by his illegal traffic— " not smart money or vindictive damages, but full atonement for the wrong." Browne on Trade-Marks, Secs. 503, 505; Coddington's Digest, Trade-Mark Cases, Secs. 246, 1051, 1052; 4 McLean, 520.

### *Chs. S. Rice* for Defendant and Appellee :

First—Bodies corporate act judicially through representatives mentioned in their charter. The *manager* of plaintiff's company had no lawful authority to bring this suit, sign the affidavit to petition and the bond of injunction. See Act of Incorporation, p. 369; C. P. 112; C. C. 438.

Second—The plaintiff's corporation has no showing in court to prosecute a suit for the protection of its mercantile or commercial business. Corporations in Louisiana are, by law, prohibited from such business. Sec. 60, 9th Ed. Angel & Ames on Corporations, C. C. 427, 432, 446; 4 Wheaton, 636; 3 Wendell, 583; Green's Brice's "Ultra Vires," 79; Acts of 1855, pp. 182 and 183; Acts of 1868, pp. 84 and 85; Rev. Stat. of 1870, Art. 683; Act of 1880, p. 169; 22 An. 524; Vredenburgh vs. Behan et als., 33 An. (not yet reported); Browne on Trade-Marks, Sec. 370.

Third—The alleged trade-mark is not a valid trade-mark.

Words descriptive merely, and not indicating origin or ownership, cannot constitute a valid trade-mark.

Words descriptive, or adopted because of, or to indicate a certain state of facts, cannot constitute a trade-mark.

A person must be the inventor or have the exclusive right from the inventor to sell the goods of such manufacture to entitle such seller to a valid trade-mark on the manufacture in question.

Words are descriptive in one combination when not necessarily so in another.

Taylor vs. Gillies, 59 N. Y. 331 (affirming same case); 5 Daly, 285; 101 U. S. Sup. Court, 51; 13 Wal. 320; 16 Pat. Off. Gaz. 680; Same, 136; 2 Sand (N. Y.) S. C. Am. Trade Mark Cases 103; 14 Am. Law Rev. 419; 45 Cal. 467; 7 Lans. (N. Y.) 151; 18 How. Pr. Rep. 64; S. C. Am. Trade-Mark Cases, 226.

Fourth—The misrepresentation by plaintiff, in connection with or as a part of his pretended trade-mark, that the article sold by him was *patented*, forfeited his right to protection, even if such mark were otherwise valid. Rev. Stat. U. S. 4900, 4901; Browne on Trade-Marks, sec. 72, p. 254; Coddington's Dig. of Trade-Mark Cases, Secs. 548, 561 and 562; 5 Law Rep. [1877], Ch. Div. 850, Cheavin vs. Walker; Am. Trade-Mark Cases, 688, The Leather Cloth Co. vs. The American Leather Cloth Co.

Fifth—Even if a lawful trade-mark, its protection is forfeited by misuse, e. g., by selling goods *not manufactured exclusively* by plaintiff for plaintiff by the Standard Oil Company; by selling as Insurance Oil, oils manufactured by and for other persons; and by doing so knowingly and repeatedly,—*this* on the principle that plaintiff must come into the Equity Court with clean hands, and the aid of the Court will not be given to assist in perpetrating a fraud on the public. Browne on Trade-Marks, sections 327, 374; Coddington's Dig., Sec. 530 to 572; Am. Trade-Mark Cases, 180; Pidding vs. How, Ibid, 640; Perry vs. Truefitt, Ibid, 644.

Sixth—A Court of Equity will not protect the exclusive use of a trade-mark, to enable a party to sell an ordinary article of commerce at a much higher price than the regular market rate of the same article, to a public so induced to pay such rate by the mistaken belief that the article is patented or has some *peculiarly and special* valuable qualities.

The opinion of the Court was delivered by

FENNER, J.  The evidence establishes that, prior to 1873, most of the illuminating oils produced from petroleum, then in the market, were of low fire-test, and consequently inflammable, and also generated vapors which, in certain combinations with atmospheric air, liable to take place, became explosive and frequently caused destruction to life and property.  Other oils, then in use, not inflammable or explosive, were deficient in illuminating or other qualities requisite to fit them for domestic use in ordinary lamps.

There existed an urgent public demand for an illuminating oil of this character, combining, with perfect safety, the other necessary qualities for family use.

With the view of supplying this demand, plaintiff instituted negotiations with certain oil refiners in Cleveland, Ohio, for the purpose of securing the production of an illuminating oil, having certain desiderated qualities as to color, specific gravity, flashing point, and fire-test.

Plaintiff succeeded, in 1873, in procuring an oil, manufactured for it and under its orders, possessing the required qualities, which, after examination, secured the public approval and recommendation of the Board of Health of this State and of the insurance companies of New Orleans and of other cities.  To this oil plaintiff gave the name "Insurance Oil," and adopted that name as its "trade-mark," under which it sold this particular oil, to distinguish it, not only from other different oils, but also from all oils sold by others than itself.  Application was made, under the act of Congress, to the U. S. Patent Office for the registry of this trade-mark and, after due examination, the Commissioner made the registry and issued the certificate.  Plaintiff had made, and used, a stencil-plate containing the words:  "Trade-mark Insurance Oil, Pat. Jan. 5, 1875," cut in letters of peculiar form and character and accompanied with certain distinctive scroll-work, with which it branded the packages containing this oil and sold by it.

Owing to the character of the oil and aided by active and expensive canvassing and advertising, plaintiff succeeded in establishing an extensive trade in this and contiguous States, profitable to itself and advantageous to the public—the evidence showing that no accident has ever occurred from the use of this "insurance oil."

The defendant, a rival dealer in oils in this city, after the reputation of plaintiff's oil had been thus established, commenced putting up and selling oils dealt in by him, as "Insurance Oil," and had made a stencil-plate, the *fac-simile* of that used by plaintiff, with which he caused his own packages to be branded and put upon the market.

Plaintiff brought the present suit to restrain, by injunction, the infringement of its trade-mark and to recover damages.

The defenses, interposed by exceptions and answer, are manifold, and will be considered in order.

1st. It was excepted that the plaintiff corporation did not, in its petition, appear by its proper officer, as required by law. The petition was in the name of the corporation without the designation of any officer. The exception was cumulated with the merits, and, on trial, it was proved that the action had been brought by the President with the approval of the Board of Directors. This cures the defect.

2nd. The objection raised to the validity of plaintiff's act of incorporation, was not properly presented by the pleadings, and was waived by the express admission found in the record, viz.: " It is admitted that the company is legally incorporated, and its name is the Insurance Oil Tank Company."

The further objection that plaintiff is violating the law by carrying on a mercantile business, is not presented by the pleadings, nor was it considered in the lower court. It does not properly arise in this case. The sole question involved is plaintiff's right to protection in the exclusive use of its trade-mark. A corporation is entitled to have its trade-mark as well as a private individual, and may sue for its infringement. Defendant cannot justify his wrongful act, by accusing the plaintiff of violating some general law of the State, not affecting plaintiff's right to have a trade-mark, but on a different subject. We express no opinion as to the legality of plaintiff's business, in support of which much might, however, be said. We simply overrule the objection, because (1st) not presented by the pleadings, (2d) not relevant to the issues in this case, (3d) as being a question which defendant is without interest to raise.

3d. Defendant urges that the use of the abbreviation " Pat.," meaning patented, in the trade-mark, is a fraud on the public and a violation of law, which deprives plaintiff of the right to redress.

It is undoubtedly true that the affixing of the word " patent " to an unpatented article, " for the purpose of deceiving the public," is prohibited, under penalties, by the laws of the United States. U. S. R. S. § 4901; and that a representation in a trade-mark that an unpatented article is protected by a patent " prima facie amounts to a misrepresentation of an important fact, which would disentitle the owner of the mark to relief in a court of equity, as against a pirate." Browne on Trade-Marks, § 572; Coddington's Dig. Tr. M. Cases, § 548; 39 Conn. 450.

But, to have such effect, the use of the word " patented " must be " with the purpose of deceiving the public," and if such fraudulent intention does not exist, and the use of the word may be explained in any reasonable sense consistent with truth and honesty, the party will not be prejudiced. ' High on Injunctions, § 674; Coddington's Dig. § 570, 571.

The plaintiff avers that the use of the word " patented " in its label

or brand was intended to refer, not to the article, Insurance Oil, but to the word *Trade-mark* placed on the top of the label. Had the words "Registered in Patent Office" been used, no question could have arisen; but the use of the word *patented*, as applied to a trade-mark so registered, is so common, that we are referred to an example where so learned a jurist as Judge Cooley uses the language: "In the United States, trade-marks may be *patented*, etc." Cooley on Torts, p. 361, note. Under such circumstances, we consider the explanation of plaintiff as sufficient to maintain its honesty of intention.

4th. Objection is made that the words "Insurance Oil" are not a legal trade-mark, because the word "insurance" merely denotes the *description* or *quality* of the article, without, in any manner, indicating origin or ownership.

The law on this subject is tersely expounded by Judge Cooley: "In general, a man may adopt for a trade-mark whatever he chooses; but when he asserts, and seeks to enforce, exclusive right therein, it becomes necessary to ascertain whether it is just to others that this be permitted. If the name, device or designation is purely arbitrary or fanciful, and has been first brought into use by him, his right to the exclusive use of it is unquestionable. But the mere designation of a quality, as ' nourishing' applied to an article of drink, cannot be appropriated as a trade-mark; neither can any general description, by words in common use, of a kind of article, or of its nature or qualities." The defendant contends that the trade-mark is defective, (1st) because the word *insurance* as applied to an illuminating oil, merely denotes the quality of *safety*, and may, therefore, be used by a vendor of any *safe* oil; (2d) that it indicates that the oil has been approved by insurance companies, and so may be employed as applicable to any oil having such approval. The learned judge of the court *a qua* sustained the defendant on these points and rejected plaintiff's demand.

We cannot agree with our brother of the District Court. While the word *insurance* may, by some process of association of ideas, suggest the notion of safety, it is not synonymous with *safe*, nor can it be said to describe any possible quality of oil. The word is a noun substantive, not grammatically applicable to the description of the qualities of things. The dictionary furnishes several examples of its use as part of compound words, such as insurance-broker, insurance-clerk, insurance-company, insurance-office, insurance-policy—all of which have well-understood meanings; but insurance-oil is, in itself, meaningless, conveying no rational idea, any more than would the words, insurance-house, or insurance-tree.

Equally untenable is the idea that these words signify that the oil has been recommended by insurance-companies. That the selection of

this name was suggested by the fact that it had received such approval, is admitted; but that the words express such a fact cannot be maintained.

We are strengthened in our conclusion by the decision of the Commissioner of patents in admitting this trade-mark to registry. The authorities of the patent office, from long experience, are familiar with the law of trade-marks, and their decisions, though not conclusive, are entitled to great consideration by courts in the determination of such questions.

5th. It is urged that the trade-mark is defective because not indicating the origin or ownership of the article.

There are authorities holding that it is essential to the validity of a trade-mark that it should indicate the name or address of the manufacturer or seller of the articles, in such manner as to distinguish them as the goods made or sold by the parties claiming the benefit thereof.

We consider, however, that the latest and best authorities establish that such particular designation is not essential; but that when a particular form of words or device, otherwise valid as a trade-mark, has been first employed by a particular maker or seller, and has been used by him upon his goods, so long and so exclusively as to have acquired, by association, an understood reference to such maker or seller as the originator or seller of articles so marked—this will be a sufficient compliance with the law, and will entitle the party to protection.

Browne, Trade-Marks, §§ 150, 151; Charter Oak Case, 44 Mo. 173 ; 57 Barb. 526; 35 Conn. 402; 13 Wall. 322; 101 U. S. 620; 3 Keyes, 594.

The evidence brings the case of plaintiff within the principle of these authorities.

6th. The objection that the oil is not directly manufactured by plaintiff, but only manufactured by others under plaintiff's orders and directions, is of no force. The authorities are clear that, in such case, the seller is as much entitled to protection in his trade-mark as if he were the manufacturer. The ground of relief is stated by the Supreme Court of the United States to be that "complainant has a valuable interest in the good will of his trade or business, and having adopted a particular label, sign, or trade-mark indicating to his customers that the article bearing it is made or *sold* by him or by his authority, he is entitled to protection against one who attempts to deprive him of his trade or customers, by using such label, signs, or trade-mark without his knowledge or consent."

McLean vs. Flemming, 6 Otto, 252; Citing 2 Sandf. N. Y., Ch. 586; 2 Barbour, N. Y., Ch. 101; Wolfe vs. Barnett, 24 An. 97; Amoskeag vs. Spear, 2 Sandf. Sup. Ct. 599; Colladay vs. Baird, 4 Phila. 139; Browne on T. M. § 35.

7th. Attack is made upon plaintiff's right to equitable protection upon the ground that it has debauched its own trade-mark by selling thereunder, as insurance oil, oils which were not such. The occasional instances of such sales established by the testimony, are not sufficient, under any authority to which we have been referred, to maintain such forfeiture.

It is true that, on a few occasions, when by detention of its shipments, plaintiff has run short of insurance oil, it has temporarily supplied the trade, with different oil under that name; but the instances are few and the amount so sold inconsiderable, and care has been taken that the substituted article should equal the genuine, in safety, if not in all other qualities. We think this conduct, though reprehensible, was not carried to such extent as to destroy the value of the trade-mark or to deprive plaintiff of his right to protection.

In conclusion, we consider that the interest of the public, which is an important motive for the protection of trade-marks, is peculiarly involved in a case of this character. If, as the record establishes, the plaintiff has so conducted its business as to inspire the public with confidence that the insurance oil manufactured for, and sold by it under its trade-mark, is not only useful and convenient, but also absolutely safe, for use for illuminating purposes, and, thereby, to secure a large and valuable trade based on such confidence—we think both the plaintiff and the public are entitled to protection in their mutual relations of confidence on the one hand and patronage on the other.

It may be, as contended by defendant, that the oil sold by him under plaintiff's trade-mark is equal, in all respects, to the oil of plaintiff. But, if defendant may use this mark, other less conscientious dealers may employ it for inferior and dangerous oils; and the public would thereby be deprived of the security now enjoyed in the purchase of oil so marked, and the business of plaintiff would be destroyed.

Defendant has no right, in justice or law, to trade upon the reputation and business sagacity and enterprise of plaintiff, which are represented by and embodied in its trade-mark.

We find in the record no sufficient proof upon which to base any estimate of damages.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be avoided and reversed; and it is now adjudged and decreed that the original injunction herein issued be reinstated and made perpetual, and that plaintiff's demand in damages be dismissed as in case of nonsuit, defendant and appellee to pay costs in both courts.

Rehearing refused.