# Kyle v. Perfection Mattress Co.

*Bill in Equity to enjoin the Infringement of a Trademark.*

1. *Trade-mark; words may constitute it; court of equity will protect the use thereof.*—A mere word or words in a certain sequence may constitute a trade-mark, the exclusive use of which a court of equity will protect; but to entitle the words to such protection they must designate and distinguish the article to which they are attached, and indicate the origin and ownership of such article, and such word or words must be arbitrary in selection and meaning, which by reason of their application to a particular class of merchandise, will indicate its ownership and origin, as distinguished from being descriptive and adjectively used, which, from their usual meaning and intrinsic significance, necessarily denote or describe the character, quality, material or grade of the goods upon which they are used.

2. *Same; same; same.*—Where a manufacturer has habitually stamped his goods with a particular mark or brand used, a court of equity will restrain another party from adopting it for the same kind or character of goods.

3. *Same; same; same; what necessary to constitute infringement.* While no definite rule applicable to all cases can be laid down as to the degree of resemblance necessary to constitute an infringement of a trade-mark, an injunction will be granted by a court of equity where the imitation is so close that by the form, mark, words or other special arrangement, or by the general appearance of the infringing device, purchasers, exercising ordinary caution, are likely to be misled into buying an article bearing the infringement for the original genuine article.

[Kyle v. Perfection Mattress Co.]

4. *Same; same; same; rule in such case.*—It is not necessary in order to entitle a party to an injunction to restrain the infringement of a trade-mark that the specified trade-mark has been actually infringed; but it is sufficient if the court is satisfied that the respondent in such case intended to represent to the public .nat the goods were those of the complainant.

5. *Same; same; same; case at bar.*—The word "Perfection" as used in the phrase "Perfection Mattress" to designate a mattress made by a peculiar process, and having a peculiar form and covered with a particular character of ticking, which mattress, as .so designated, had been made exclusively by a particular factory, and was sold and known in the trade by such name, will constitute a trade-mark; and a court of equity will protect the use of. such trade-mark for the original manufacturer by enjoining another factory from using the words "Perfection Mattress" to designate a mattress of the same particular type, as to quality, form, style and ticking, and the fact that the new mattresses were called "Kyle's Perfection" or "Improved Perfection Mattress" does not constitute a sufficient differentiation to prevent the infringement of the trade mark, when such name is shown to have been used upon labels of the same character and style as were used upon the original mattress.

APPEAL from the Chancery Court of Jefferson.
Heard before the Hon. JOHN C. CARMICHAEL.
The facts in this case are sufficiently stated in the opinion.

E. J. SMYER, for appellant.—As we understand the law, the sale of "good will" is a sale of nothing but the chance of being able to keep the business which has been established. It is the sale of a mere chance which vests in the purchaser the possibility that a preference that has usually been extended may continue.—8 Amer. & Eng. Enc. of Law, 1366. A sale of good will does not imply a contract on the part of a vendor to not again engage in a similar business.—8 Amer. & Eng. Enc. of Law, 1368; *Howard v. Taylor*, 90 Ala. 243. "In the absence of express agreement to the contrary, the vendor may lawfully establish a similar business at the next door, and by advertisement, circular, card and personal solicitation, invite all the world, including the

old customers of the vendor, to come there and purchase of him.—*Williams v. Farrand,* 88 Mich. 473.

The right to engage again in the same line of business includes all of the incidents of that right.—*Hookham v. Pottage,* L. R. 8 Ch. App. 91; *Howard v. Taylor,* 90 Ala. 243.

We will now consider the trade-mark feature of the bill. As we understand the law, title to a trade-mark can only be acquired by affixing that which is claimed as a trade-mark to the manufactured article. The use of the mark on advertising matter does not create a title.—26 Amer. & Eng. Enc. of Law, 358; *Hezleton Boiler Co. v. Trepod Boiler Co.,* 142 Ill. 507.

The word "Perfection" as used in this case was used as a descriptive word or to indicate the excellence of the mattresses.—*Corbin v. Gould,* 133 U. S. 308; *Fish Company v. Waster,* 28 Mo. App. 408; *Colgan v. Donheiser,* 35 Fed. Rep. 150; *Ex parte Kipling,* 24 Pat. Offi. Gaz. 899; *Ginter v. Tobacco Co.,* 12 Fed. Rep. 782; *Larabee v. Lewis,* 67 Ga. 562; *In re Goodyear Rubber Co.,* 11 Pat. Offi. Gaz. 1062; *Chanski v. Cohen,* 29 Cal. 501. Words which merely indicate the peculiar excellence of goods can not be exclusively appropriated.—26 Amer. & Eng. Encyc. of Law, 291, and cases cited.

A trade mark is a sign, symbol or device used by a person, firm or corporation for the purpose of indicating to their customers that the goods upon which the name or mark appears are made or sold by him, them or it, or to indicate the business he, they or it conducts, or the place where said business is carried on—*to indicate the origin or ownership.*—26 Amer. & Eng. Enc. of Law, 241. Words or symbols which indicate grade, and which were adopted for that purpose, can not be protected, notwithstanding that by long use they may also have come to indicate origin and ownership.—26 Amer. & Eng. Enc. of Law, 292; *Amoskeag Mfg. Co. v. Trainer,* 101 U. S. 55; *Lawrence Mfg. Co. v. Tenn. Mfg. Co.,* 138 U. S. 537; *Coswell v. Davis,* 58. N. Y. 223; *Roal Baking Powder Co. v. Sherrill,* 93 N .Y. 331; *Raymond v. Royal Baking Powder Co.,* 85 Fed. 231. The word "Perfection" was not used to indicate *origin*

*or ownership,* for each circular and each label, (as shown by the exhibits), stated fully, clearly and with certainty the name of the manufacturer and place of manufacture.—*Amoskeag v. Trainer,* 101 U. S. 55; *Canal Co. v. Clarke,* 13 Wall. 311; *McLean v. Fleming,* 96 U. S. 245.

In trade-marks, in order to entitle the plaintiff to relief by injunction, the resemblance must be such that ordinary purchasers, exercising ordinary prudence and caution are likely to be misled. It is not enough that there may be a possibility of deception.

The offending label must be such that it is likely to deceive persons of ordinary intelligence. To entitle the plaintiff to relief by injunction the resemblance must be such that the ordinary purchaser dealing with ordinary caution, is likely to be misled.—*Heinz v. Lutz,* 146 Pa. State, 592; *McLean v. Fleming,* 96 U. S. 245.

The label of the Perfection Mattress Company has on it the imprint of two circular medals, while the label of the Kyle Mattress Factory has no imprint on it of any medal.—*Monroe v. Smith,* 59 Hun. 624; *Singer Mfg. Co. v. Wilson,* 2 Ch. Div. 447; *Hur v. Abraham,* 82 N. Y. 519; 37 Am. Rep. 589; *Gillman v. Hunnewell,* 122 Mass. 148.

The fact that the Kyle Mattress Factory uses the same style of ticking as that used by the Perfection Mattress Company is not evidence of an intent to deceive the public. The manufacturer had the right to sell this ticking, and the Kyle Mattress Factory had the right to buy and to use.

It is settled law that where the question is one simply of unfair competition in trade, it is not essential that there should be any exclusive or proprietary rights in the words or labels used in order to maintain the action. The doctrine is broadly announced that irrespective of any question of trade-mark, rival manufacturers have no right by imitative devices to beguile the public into buying their wares, under the impression that they are buying those of their rivals.

The gist of the wrong as decided in all cases is the fraud in inducing a purchaser to believe that he is buying the goods of one manufacturer when in fact

he is buying the goods of another.—*Flouring Mill Company v. Eagle*, 86 Fed. 608; *Coates v. Merrick Thread Company*, 149 U. S. 562; *Singer Mfg. Co. v. June Mfg. Co.*, 163 U. S. 169; *Lore v. Harper Bros.*, 86 Fed. 481; *Gillman v. Hunnewell*, 122 Mass. 139; *Lawrence Mfg. Co. v. Lowell Harnsey Mills*, 129 Mass. 327; 26 Amer. & Eng. Enc. of Law, 433; *Weist Co. v. W. H. Weeks*, 34 L. R. A. 172.

CABANISS & WEAKLEY, *contra*.—The word "Perfection," as applied to mattresses, is a fanciful and arbitrary designation of them, and hence it will be protected as a trade-mark, even as against strangers. In the first place, the word is not an adjective at all, and the use of it as applied to "mattress" is not the natural and usual method of employing the word, in the adjective form of "perfect," in common parlance. The reason why a purely descriptive word cannot be employed as a trade-mark is that no person can monopolize the words of the language that others would naturally use in describing the same article of manufacture. It is well settled that suggestive words, words thus remotely or secondarily descriptive, may be appropriated as trade-marks.

"Names which to some extent suggest the character, quality or ingredients of an article, or some supposed advantage to be derived from using it, or some effect to be produced by its use, have been ordinarily upheld as valid trade-marks."—26 Am. & Eng. Enc. Law (1st ed.) p. 282; *Waterman v. Shipman*, 130 N. Y. 301. The books are full of cases where such suggestive words have been protected as trade marks.—*O'Rourke v. Soap Co.*, 26 Fed. Rep. 576; *Davis v. Kendall*, 2 R. I. 566; *Ex parte Hayman*, 18 O. G. 922; *Fulton v. Sellers*, 4 Brewster, 42; *Brown on Trade Marks*, 273; *Ins. Oil T. Co. v. Scott*, 33 La. Ann. 946; *Larabee v. Lewis*, 67 Ga. 561; *Partridge v. Menck*, 47 Amer. Dec. 293; *Hier v. Abrahams*, 82 N. Y. 519; *Carroll v. Ertheiler*, 1 Fed. Rep. 688; *Smith v. Sexbury*, 25 Hun. 232; *Blatz Brew. Co. v. K. B. Co.*, 74 Fed. Rep. 222; *Stoughton v. Woodward*, 39 Fed. Rep. 902; *Selchow v. Baker*, 93 N. Y. 59; *Kinney Tobacco Co. v. Muller*, 6 N. Y. Sup. 389; *Raw-*

*linson v. Brainard Oil Co.,* 59 N. Y. Sup. 878; *Colgate v. Adams,* 88 Fed. Rep. 899; *Bailey v. Mfg. Co.* 10 N. Y. Sup. 224; *Royal Bak. Powder Co. v. Raymond,* 70 Fed Rep. 376; *Menendez v. Halt,* 128 U. S. 514; *Godliett v. Harris,* 81 N. Y. 263; *Gillett v. Esterbrook,* 47 Barb. 455; *Price Bak. Powder v. Fyfe,* 45 Fed. Rep. 799; *Battle v. Finley,* 45 Ala. 796; *Penn. S. Mfg. Co. v. Myers,* 79 Fed. Rep. 87; *Bennett v. McKinley,* 13 C. C. A. 25, 65 Fed. Rep. 505.

"What degree of resemblance is sufficient to warrant the interference of the court, in cases of unfair competition, is incapable of exact definition. It is of course mainly a question of fact to be determined by the circumstances of each case. In general it may be said that if the resemblance is such as to mislead purchasers buying with ordinary caution, this is sufficient."—*McLean v. Fleming,* 96 U. S. 251.

"In considering the matter of the extent or degree of imitation, it is always to be remembered that the purchaser, especially the purchasing consumer, buys without any opportunity of seeing the two packages, with their marks, labels, wrappers, etc., side by side. He will have in mind merely the most prominent and characteristic features distinguishing the goods he wishes to buy. Minor differences, apparent enough on bringing the two together, will not be noticed."—*Shaw Stocking v. Mack,* 12 Fed. Rep. 707. The question always is, whether there is similitude in the substantial parts of a trade mark.—*Hutchinson v. Blumberg,* 51 Fed. Rep. 829; *Carroll v. Ertheiler,* 1 Fed. Rep. 688; *Humphrey's Spec. Hom. Med. Co. v. Wenz,* 14 Fed. Rep. 250; *Hier v. Abrahams,* 82 N. Y. 519, 37 Amer. Rep. 589.

But irrespective of a technical trade mark, a dealer has no right to palm off his goods as those of another, or to so dress them us as to allow unscrupulous dealers to do so. Thus in *Buck's S. & R. Co. v. Kreible,* 76 Fed. 758, the complainant enamelled the inner face of its stove and range doors with white, so that they had become known as "White Enamel" stoves, and the defendant was enjoined from making stoves in imitation of complainant's, which could be sold to the trade as white enamel stoves. It is further well settled that un-

lawful competition may consist merely in imitating a trade name for an article, which is not technically a good trade-mark.—*Pierce v. Guittard,* 68 Cal. 68; *Glenfield Starch Case,* L. R. 5 H. L. 508; *Stone Ale Case,* (1891), App. cases, 217; *Lawrence Mfg. Co. v. Tenn. Manfg. Co.,* 138 U. S. 537; *Fleishman v. Shuckman,* 62 How Prac. (N. Y.) 92.

In this case it is most obvious the court will not accept their sworn denial of an intentional design to imitate. As the vice-chancellor said in *Edleston v. Vick,* 23 Eng. Law & Eq. 51, 53: "The court or the jury would in such a state of things be bound to presume that it was not a fortuitous occurrence of events which has produced this similarity. It would be irrational not to rest convinced that this remarkable coincidence of appearance, external and internal, is the result of design." This case is so clearly within the authorities against unfair competition as not to require or justify any elaborate argument on this point.—See 26 Am. & Eng. Enc. Law (1st ed.) p. 433 *et seq; McLean v. Fleming,* 96 U. S. 245; *VanMunn v. Frash,* 56 Fed. 830; *Noel v. Ellis,* 89 Fed. 978; *Frank v. Chi. Co.,* 95 Fed. 818; *Pillsbury v. Flour Mills Co.,* 64 Fed. 841 (C. C. A.); *Johnson v. Bauer,* 82 Fed. 662; *Hilson v. Foster,* 80 Fed. 896; *Garrett v. Garrett & Co.,* 78 Fed. 472 (C. C. A.); *Pillsbury-Washburn Co. v. Eagle,* 86 Fed. 608, (C. C. A.)

We respectfully insist that the words "Perfection Mattress," in collocation, constitute a valid trademark, not descriptive of the character and quality of the mattress. It had long been in use by the complainant, and those under whom it claims, and had never before been used to describe mattresses.—*Waterman v. Shipman,* 130 N. Y. 301; *Tetlow v. Tappan,* 85 Fed. Rep. 774; *Price Bak. Pow. Co. v. Fyfe,* 45 Fed. Rep. 799; *Listman Mill Co. v. Milling Co.,* 88 Wis. 334, 43 Amer. St. Rep. 907; *Raymond v. Royal Powder Co.,* 85 Fed. Rep. 231, 29 C. C. A. 245. When we come to consider that defendants are undertaking to destroy the good will of the business they sold to complainant, to take away their business, and are engaging in unfair competition by imitating the product of the com-

plainant, the case becomes doubly strong. The authorities show that whether "Perfection" could be called a technical trade-mark or not, yet by defendants selling the good will of the business to the complainant, they sold the right to use the trade names of said business, and if they wished to compete they must employ some other words to denote their goods.—*Robinson v. Stone,* 52 S. W. Rep. 880; *Merry v. Hoopes,* 111 N. Y. 415; *Hixie v. Chaney,* 143 Mass, 592; *Myers v. Buggy Co.,* 54 Mich. 215; *Rains v. White,* 52 S. W. Rep. 970.

"A sale of the good will of a hotel called "Mason Hotel," or "Western Hotel," prevents the former proprietor not only from engaging again in such business, under any name at the old stand, although purchaser after a fire has removed to another place in the same town, but also from carrying on such business in that vicinity under either of the old names."—*Mossop v. Mason,* 18 Grant Ch. 453. The authorities upon the subject of unfair competition are so numerous we cannot pretend to exhaust them, but the following will show with what a steady hand the courts have prevented such fraud and deception as this case discloses. *Bolen v. Jonash,* 60 N. Y. Sup. 555; *Weinstocks v. Marks,* 57 Am. St. Rep. 57; *Cady v. Schultz,* 61 Am. St. Rep. 763; *Pillsbury Wash. Mills Co. v. Eagle,* 86 Fed. 608; *Pillsbury v. Mills Co.,* 64 Fed. 841; *Simmons Regulator Case,* 23 S. W. 165; *Robinson v. Storm,* 52 S. W. 880.

TYSON, J.—In this cause the appellee filed its bill for an injunction against the appellants to restrain an appropriation by them of its trade-mark and infringement of its good will. The injunction being granted and the bill answered, motion was made to dissolve the former and dismiss the latter. These motions being refused, this appeal is prosecuted to review the rulings of the court in that respect. There is practically no dispute about the facts or as to the abstract principles of law involved. The difficulty arises out of the application of the principles to the facts admitted. The facts are, in short, these: J. C. Kyle, operating in the name of and for his wife, started the business of manu-

facturing by a peculiar process mattresses in the city of Birmingham, giving to the mattress a peculiar form and dress, which he called and labelled the "Perfection Mattress," and which he sold in that city and other markets. Afterwards, one Dixon bought a half interest in the business and it was continued and extended under the name of the Perfection Mattress Company, J. C. Kyle being the active manager. Some time after this, the parties interested formed the corporation, the present appellee, to carry on the same business and paid up their stock subscriptions by a conveyance and transfer of the partnership business which had been previously carried on under the same name. Mrs. Kyle owned a half interest in the capital stock, and her husband was secretary and treasurer, and continued the active manager. Largely by his efforts, the name and reputation of the "Perfection Mattress" was extended and became known throughout the country, and was the basis of a profitable business to the corporation. After this Mrs. Kyle, having disposed of her stock in the corporation, set up a rival establishment in the same city in the manufacture of mattresses, managed and operated exclusively by her husband. By design or by some unaccountable accident or freak of fancy, the mattress made was called "Kyle's Perfection Mattress," and assumed the exact shape, form and peculiar dress of that manufactured by the appellee. The mattress made by appellee had for its cover a ticking of an unusual pattern or design and made by a particular factory. Kyle was careful to obtain this same ticking and when a sale of it was refused to him by the manufacturer of it he obtained it, through third parties, showing an anxiety to dress the new mattress in imitation of the old. The new mattress could not be distinguished in appearance from that made by the appellee, which being singular and peculiar, could only result from design. The new product and the old were each labelled, exact copies of which are set out as exhibits to the bill and admitted by the answers. The similarity between the two is such and so remarkable, notwithstanding their differences, as to make it reasonably certain that the latter one was a designed imita-

tion of appellee's label, and intended and calculated to induce buyers to purchase the new product as the genuine "Perfection Mattress" marketed by the appellee.

It cannot be denied that the appellants, after the sale of their business to the corporation and after the sale of the stock in that company, had the right to engage in the business of making and vending mattresses in the same city, and, so far as the manufacture was not protected by patents, of the same kind and quality as those made by the appellee. It is under this right, the appellants seek to justify their conduct.—*Williams v. Farrand,* 88 Mich. 473. But they cannot make this principle cover this case. The appellants themselves, first, and the appellee afterwards, built up, it must be presumed, at the cost of time, trouble and expense, the reputation of a mattress of a particular type as to quality, form, style and dress, under the name and label of "Perfection Mattress." The appellants first, in the sale to the partnership and afterwards to the corporation, and still later, in the sale of the stock in the corporation, are presumed to have received a full consideration for the transfer to the appellee of the exclusive right to this good will and trade-mark. Certainly to deceive the public and take the hard-earned patronage which an artisan or dealer has attached to a particular brand employed to designate the origin and quality of his goods, is a double wrong, in that it is a deception of the public and an injury to the individual. In this case it is insisted that the word "Perfection" in the connection in which it was used, is not and cannot be a trade-mark. The law on this subject is clearly stated in the case of *Lawrence M. Co. v. Tenn. M. Co.,* 138 U. S. 537. It is there shown, "that 'the office of a trade-mark is to point out distinctly the origin or ownership of the article to which it is affixed; or, in other words, to give notice who was the producer. This may, in many cases, be done by a name, a mark or a device well known, but not previously applied to the same article. * * * Hence the trade-mark must either by itself, or by association, point distinctly to the origin or ownership of the article to which it is applied. The reason for this is that unless it does, neither can

he who first adopted it be injured by any appropriation or imitation of it by others, nor can the public be deceived.'" Without quoting more, let us apply this to the facts of this case. What does "Perfection Mattress" mean? Grammatically, it is nonsense, unless we regard "perfection" as a fanciful name to mark the peculiar goods of some person; in this case, of the "Perfection Mattress Company." The word has the same significance in each of these collocations. In the latter phrase though a general word of the language, it is applied and appropriated to designate a corporation in connection with the words "Mattress Company." In this connecttion, it would be useless to look in a dictionary for its meaning. In the former phrase, it likewise was a fanciful name given to the ~oods manufactured by the Kyles and afterwards by the co-partnership and the corporation. It was clearly so intended, because it could have no other meaning, and by the law of association it has now become an established designation with the public of the product of the appellee.—*Wi'terman v. Shipman*, 130 N. Y. 301; *O'Rourke v. Soap Co.*, 26 Fed. 576; *Ins. Oil T. Co. v. Scott*, 33 La. Ann. 946; *Royal Baking P. Co. v. Raymond*, 70 Fed. 376; *Menendez v. Holt*, 128 U. S. 514; *Bennett v. McKinley*, 65 Fed. Rep. 505.

By the production of a superior article answering to this original fanciful name, the word may acquire a new meaning indicative of quality. But this is the natural and desired result of a trade-mark, making it more valuable, and it would be strange that this should make it common property.—*Lawrence M. Co. v. Tenn. M. C., supra.*

It is reasonably certain that the appellants well understood the value of the name "Perfection" as a mere name, in its use in connection with the mattress, as indicating a product which had been manufactured by them originally and afterwards and now by their vendees and successors in business, and which had come to indicate a mattress of high esteem and reputation. If it was used awkwardly and ungrammatically in the first instance to express a grade or quality, how was it that they fell into the same error in reference to their product? It cannot be seriously doubted from

4

the facts that the appellants intended by adopting the name, to delude the public and to secure the patronage which appertained to its use in the particular connection belonging to the appellee. What other purpose could the appellants have had in using this substantive noun "Perfection" as an adjective? The motive is disclosed in the care taken to give their mattresses the peculiar dress of the appellee's and in the similarity of their label in other respects than in the adoption of the name "Perfection," to that of the appellee, and in the false recitals of their former connection with the appellee. All these things point to the formed design of imitation in aid of the adopted name.—*McLean v. Fleming*, 96 U. S. 245; *Colgate v. Adams*, 88 Fed. 899; *Partridge v. Menck*, 47 Am. Dec. 296; *Hutchinson v. Blumberg*, 51 Fed. 829; *Carroll v. Ertheiler*, 1 Fed. 688; *Humphreys v. Wenz*, 14 Fed. 250.

It may be said, however, that a careful observer would not be deceived by the label. That it expressly gives notice that the Kyle Mattress Company was the manufacturer. But why use "Perfection" at all as a name? Was there any necessity arising from the paucity of language which required the use of this name? Or, if the word described the quality, why make the same grammatical blunder as that made in describing the mattresses manufactured by the appellee? Copying mistakes dispels all claims to originality. The differentiation from appellee's label found in appellants' was evidently put in to found an argument on, in case of suit, while the similitude was inserted to obtain the public patronage by deception. "This is the usual artifice of the unfair trader."—*Collinsplatt v. Finlayson*, 88 Fed. 693. The case of *Williams v. Farrand*, 88 Mich. 473, contains a number of cases illustrative of this. It is there said : "No man has a right to sell or advertise his own business or goods as those of another person." It is also further said, "that an assignment of all of the stock, property and effects of a business, * * * carries with it the exclusive right to use a fictitious name in which such business has been carried on and such trade marks and trade names as have been used in such business." The authorities cited in this

case, as well as many in the briefs of counsel, bring the case under consideration within the influence of these principles.

In *Myers v. Buggy Co.*, 54 Mich. 215, the opinion delivered by Judge Cooley, it was held that parties doing business under the name of Kalamazoo Wagon Company, having sold out, could not carry on a rival business under the name of the Kalamazoo Buggy Company. Says he: "The good will was a substantial part of the purchase, and purposely to take any steps to prevent his [the vendee's] receiving the benefit of it was a wrong of the same nature as would have been the retention of some portion of tangible property." Here then is a right to the exclusive use of the term "Perfection Mattress," both as a trade-mark and under the sale of the good will of the Perfection Mattress Company.

In *Lee v. Haley*, L. R. 5 C. H. App. 155, the defendant who had been manager of a firm doing business under the artificial name of "Guinea Coal Company," set up a rival business at a different stand under the name of "Pall Mall Guinea Coal Company." His envelopes and business cards resemble the plaintiff's. He was held a cheat.

In *Glenny v. Smith*, 2 Drew. & S. 476, defendant, who had been employed by plaintiffs, printed his sign and arranged his awnings so as palpably to attract the public, on the idea that they were trading with plaintiffs. He used his own name, "from" in small letters, "Thresher and Glenny," plaintiffs' firm name, in large letters. He had an awning, which when let down would cover his name and expose only the plaintiff's firm name. The court held that defendant was deceiving the public.

The purpose to appropriate what belongs to others is not veiled by calling the new mattress "Kyle's Perfection Mattress," or by asserting that it was the "Improved Perfection Mattress," or other weak differentiations. When there is a marked similarity in the labels, signs, literature and devices for attracting custom, but little weight is attached to precautionary differences or denials of a purpose to deceive the public.—*Collinsplatt v. Finlayson, supra.*

[Carter v. Fischer.]

We are constrained to hold that the lower court committed no error in refusing to dismiss the bill for want of equity or to dissolve the injunction.   Affirmed.