## THOMAS A. EDISON, Inc., v. SHOTKIN.
### Civ. No. 786.

District Court, D. Colorado.
Oct. 30, 1946.

Edward S. Rogers and William T. Woodson, both of Chicago, Ill., and Elmer L. Brock and John R. Turnquist, both of Denver, Colo., for plaintiff.

Bernard M. Shotkin, of Denver, Colo., pro se.

KENNEDY, District Judge (Assigned).

This case has been the most exacting and exasperating of any that I have ever had in 25 years' experience on the bench. I do not make this observation from purely personal conclusions but the record will support such conclusions. The patience of the Court has been taxed to the limit. I was invited to sit in the case after some phases of it had been disposed of by the resident Judge of the District of Colorado and it is evident that while the defendant was represented by counsel things moved along reasonably regular lines. Subsequently, however, the defendant dismissed counsel and announced his intention to try his own case. The conduct of the defendant became so exasperating to the resident Judge that he withdrew from the case and has since declined to sit in any case where the defendant is concerned. When I was assigned to sit in the case by the Senior Circuit Judge, I did not know the defendant or anything about the case. The record purports to show that while the defendant was not admitted to the Bar, he claimed to hold a certificate of graduation from a

law school. This gave him a smattering of knowledge in regard to legal matters but his conduct demonstrated that he had absorbed none of the professional ethics governing conduct in the courtroom or elsewhere. Rulings of the Court were disregarded and it became necessary, in order to preserve reasonable decorum in the trial, to repeatedly advise the defendant, in acting as counsel for himself, that he was seriously offending the dignity of the Court and retarding the progress of the trial. Owing to the fact that he was attempting to try his own case, I exercised what I considered to be extreme leniency so that he would have full opportunity to present his case the best he could, advising him at the same time that if he were an admitted member of the Bar and carried on as he did throughout the trial that he would be fined for contempt of Court and if the fine were not paid he would be placed in jail. In the midst of the trial proper, he presented an affidavit of prejudice against the trial Judge based largely upon the rulings which were adverse to him and secondarily upon the proposition that I had threatened to put him in jail and therefore he was afraid. This was, of course, overruled as being neither timely nor legally sufficient, nor justified by the circumstances. If there was any fear exhibited by the defendant in the trial, it escaped my notice. On the other hand, he was defiant in regard to every adverse ruling which the Court made and repeatedly refused to be bound by such ruling. Even after the case had been submitted for presentation upon trial briefs, and was held under advisement, the defendant attempted to submit to the Court additional exhibits which had not been presented at the trial, which in order to protect the record and to avoid error in the case, I returned through the Clerk's office to the defendant. The case consumed approximately 10 days in the trial proper and should, if properly tried, have taken less than half that time. The great body of evidence which the defendant introduced was cumulative and of no particular benefit to the Court because of the fact that after the real situation was developed by the testimony early in the trial, the matter became one of law in determining what law should apply to the facts as established. Such a trial with the presentation by a member of the Bar would have involved an orderly procedure. It became a matter in my mind as to whether the defendant should be kept within the bounds of propriety the same as a lawyer would be or, in the interest of getting the case disposed of, to tolerate his unseemly conduct, in which I finally chose the latter course. Under all these circumstances I feel that it is entirely within the discretion of the Court to call attention to these factors before starting a discussion leading to a determination of the case on the merits. Notwithstanding what has heretofore been said, I have made every effort to consider and decide the case without prejudice on account of the unusual circumstances of its presentation and to adhere to the principles of law which are involved.

The suit is one in which the plaintiff invokes the doctrines of trade-mark infringement and unfair competition and sets up in some detail in the complaint the actions of the defendant which are challenged and seeks a judgment that the defendant be perpetually enjoined and restrained from using plaintiff's trade-mark or any colorable imitation thereof in the conduct of his business and from making any representation, express or implied, or doing any act which in any way would cause the belief that the defendant's business is in any way associated with or connected with the plaintiff or any of its predecessors or that defendant's products come from or are sponsored by the plaintiff and enjoining defendant from competing unfairly with the plaintiff.

Issues were joined through an answer by which various allegations are admitted but many denied and asserting other defenses seeking to justify the defendant in his conduct of business and the use of the names "Edison" and "Dison". This answer prays that the plaintiff's cause of action be dismissed. Without further analysis of the pleadings, the actual issues in the case will sufficiently appear from what may be said in connection with the evidence and the legal propositions involved.

The basic facts in the case are not seriously in dispute. Briefly stated, the evidence shows that the name "Edison" was that of the famous electrical wizard, Thomas A. Edison, who in the development of his inventions and discoveries, many of which were patented, were processed and developed through a system of organized companies with his consent and sanction and of which he personally was in control for many years. The subject of these inventions and productions were distinctively electrical appliances, apparatus and accessories. Edison himself was very particular in regard to the use of his name and cautiously gave advice and instruction to his associates not to allow the use of his name indiscriminately but only where it received the sanction and consent of himself and associates. The practical operations passed into the hands of incorporations and emerged finally into the corporate name as appears in this action as plaintiff. Various types of consent were granted to companies for the use of the name "Edison" in conducting businesses which were licensed or permitted, either orally or in writing, to use the name Edison where the regular Edison Companies were satisfied that the name would be duly protected by the adherence to the recognized forms of business integrity. Through years subsequent to the organization of the parent company, these various companies and the plaintiff company have endeavored to protect the name by bringing numerous suits against those business owners who attempted to appropriate the name of Edison in electrical lines of endeavor. According to the record, these suits seem to have been successful while some are shown to have been concluded through consent decrees in favor of the Edison Companies. The evidence also shows that the name "Edison", in a particular form, was registered as a trade-mark in Washington. It likewise shows that the permission to the use of the name was in the final analysis confined to those companies, institutions and businesses which actually belonged to the so-called "Edison family". The case at bar is a suit virtually like the others which have been mentioned in an endeavor to prohibit the promiscuous use of the Edison name by those who sought to appropriate it on account of its significance in connection with electrical apparatus and appliances.

Briefly, the defendant's history is to the effect that he bought out a business of a similar type at some point in Florida and afterwards, on account of health circumstances, removed to Denver and established a business under the same name as that which he had theretofore purchased in Florida—Edison Power & Light Company. He has continued his business in the City of Denver, operating under such name, for a period of years, dealing in electrical apparatus and appliances. The evidence in this respect shows that some confusion and misunderstanding had arisen through the shipment of goods to recognized Edison Companies operating in the community and by those who considered that the name of defendant's business implied that he was associated with the Edison recognized companies and therefore had attached to him the responsibility and reliability which followed the name.

The articles sold by the defendant, which he claims justified his course of action, were not Edison-made goods when the label was actually examined although in his freely distributed circulars, attempting to attract business of the electrical appliance nature, bore the insignia in some places "Certified by Edison". The defendant at the trial complained bitterly of the attempt on the part of a large corporation to take away his means of livelihood by preventing him from using the name Edison in connection with his business but, on the other hand, evidence was introduced by him to the effect that some people who had done business with him at his place of business in Denver, paid no attention to the name of his business and knew it was run by Shotkin himself and in certain instances that they conducted business with him because they knew him personally. The record is replete with exhibits of various kinds showing the activity and the manner in which the defendant conducted his business but it would serve no useful purpose

to try to enumerate or to discuss the entire evidence and exhibits in a memorandum of this nature. Suffice it to say that they have been given due consideration.

■ I am of the opinion that the evidence in this case will not support a finding by the Court that the acts of the defendant constitute an infringement of plaintiff's trade-mark for the reason that except in minor instances the goods sold by the defendant have not carried the trade-mark of plaintiff and the circulars of the defendant distributed to the public do not indicate clearly that the goods sold are those which are represented to bear plaintiff's trade-mark. The cases seem generally to hold that the trade-mark is infringed in those cases where it is attached to the article sold in such a way as to indicate that the article is represented as being a product of the manufacturer or owner of the trade-mark. In the vast majority of cases, as shown by the evidence here, the individual articles sold by the defendant do not purport to carry the device or a similarity thereto, protected by plaintiff's trade-mark. This is indicated by the case of Manufacturing Co. v. Trainer, 101 U.S. 51, 25 L.Ed. 993, strongly urged upon the Court by defendant. For reasons stated, this phase of plaintiff's case will be held not to have been sustained by the evidence.

■ This leaves for consideration the claim of plaintiff that the acts of the defendant constitute unfair competition and unfair trade practices. The evidence upon this phase of the case has been outlined previously, however it should be mentioned here that while the advertising material freely circulated by the defendant carried the significant phrase "Certified by Edison" may not have been sufficient to have constituted an infringement of plaintiff's trade-mark, it certainly is sufficient to establish in the mind of the public the belief that the goods which defendant was selling in his place of business were actually approved by Edison and constituted a direct attempt to deceive the public into the belief that he was in some way connected with the Edison Companies which had been established by Thomas A. Edison or

through his authorization. Merely because in other instances persons have committed piracy in the use of the name Edison, who have not been prosecuted, does not justify a conclusion that the defendant should be permitted to pursue the same course in view of the fact that the plaintiff has rather consistently throughout the years attempted to protect the name by appropriate Court action. The plaintiff should in justice be permitted to select those places where it stood to suffer the greater damage in lieu of making a mass attack upon all offenders at an enormous expense.

■ I have examined many of the cases cited in the briefs and I find myself unable to distinguish the present case from the rule laid down in our own Circuit by the opinions of Judge Phillips in Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973, and R. H. Macy & Co. v. Colorado Clothing Manufacturing Co., 10 Cir., 68 F.2d 690. In these cases the principle has been enunciated that the general purpose of the law of unfair competition is to prevent a person from passing off his business as that of another and that frequently a name in the business world in the business of a trader acquires a secondary meaning, the appropriation of which name by another would directly effect such business since the use might lead to confusion and deception. It is shown in the case at bar that confusion has arisen on account of the fact the name Edison was used by defendant and that in a marked degree it has created a deception which is likely to—and has in fact—affected the public. There is, of course, a difference in the facts of the cases cited from those in the case at bar, but I can find no distinguishing difference which calls for a different pronouncement of legal principles to govern the rights of plaintiff here. Therefore, upon this phase of the case, the Court takes the view that the claim of the plaintiff has been sustained.

■ A little more difficult point suggested by the defendant is that the name Edison has become publici juris, or in the phraseology frequently repeated by the defendant, that it has become "generic". In this respect, the defendant particularly re-

lies upon several cases, including Singer Manufacturing Co. v. Bent, 163 U. S. 205, 16 S.Ct. 1016, 41 L.Ed. 131, and French Republic v. Saratoga Vichy Co., 191 U. S. 427, 24 S.Ct. 145, 48 L.Ed. 247. The principle invoked in many of the cases seems to carry the thought that the exclusive use of the name has been tacitly assented to or has been abandoned covering a substantial period of time thereby justifying the conclusion that there has been no objection and no affirmative action to protect the name by the rightful owners. In the Singer case, it may be noted that the Court eventually required the defendant to so mark the goods sold under the name of "Singer" showing that they were the product of the defendant and not the product of the plaintiff so that this case does not give the defendant here absolution from his conduct in appropriating the name of another dealer or manufacturer dealing in the same class of goods. In the Vichy case the defendant was likewise required to mark his goods in such a way as to avoid confusion with those of the plaintiff. In addition, in harmony with the authorities along this line, it appears that the plaintiff has continuously and upon many occasions in the Courts successfully challenged the right of those not in any way associated with Edison or his legitimate "children" companies to use his name in connection with a business of a similar type but in no way associated with the regularly legitimized Edison companies. The evidence here cannot be held to justify a conclusion that the Edison Company and its associated family of companies has ever abandoned the name to the public nor has it sat quietly by and consented by silence to the appropriation of the name by others.

So far as the equities of the case here are concerned, as before mentioned, some of defendant's witnesses testified—to his evident delight—that they knew him by the name of Shotkin and traded with him because they knew he was the proprietor of the concern and not because of the use of the name Edison. Certainly from this testimony it would appear that the defendant cannot be materially injured in conducting his own business if he is required to dispense with the name of Edison. However, there seems to be abundant evidence to justify the conclusion that there has been confusion and misunderstanding on the part of the public that he was conducting a business and had been authorized to use the name Edison and on this account that the goods which he sold would be associated with the high-standard of products which had been established under the name of Edison for years. The fact that the products sold carried the name of other manufacturers or dealers than that of Edison Company does not entirely relieve the defendant of his legal responsibility because in many instances where the public purchases from a store identified as an Edison Store they do not observe the manufacturing label upon the individual article purchased. Therefore the claim of defendant that the name has become publici juris cannot be sustained.

No attempt has been made in this memorandum to more than express the general views of the Court as to the points involved and for the benefit of counsel in preparing appropriate findings of fact and conclusions of law to be followed by the entry of a judgment in harmony therewith. To plaintiff's counsel will be delegated the duty of preparing such findings of fact and conclusions of law but including such basic facts as are necessary to support a judgment in plaintiff's favor, in collaboration with defendant if possible, which judgment will enjoin and restrain the defendant from the acts complained of in harmony with the prayer of the complaint, along the lines discussed herein, reserving to both parties all exceptions desired and to submit such findings, conclusions and judgment to the Court within 30 days from the date of this memorandum, and the Clerk of the Court will enter an order accordingly.