BROOKLYN HEBREW HOME AND HOSPITAL FOR THE
AGED, Plaintiff, *v.* JEWISH HOME FOR AGED AND
INFIRM, Defendant.

(Supreme Court, Kings Special Term, December, 1921.)

Injunction — unfair use of corporate name — charitable institution
restrained from using name and from advertising so as to!
lead public to confuse its activities with those of an earlier
established like institution.

An injunction may be granted to restrain an unfair and
a misleading use of a corporate name.

In an action by the " Brooklyn Hebrew Home and Hospital
for the Aged," a duly organized membership corporation, well
known in Brooklyn where it has long labored in its particular
field of care of aged and infirm Jewish people, having in 1920
paid more than $60,000 for the maintenance for its home and
hospital, to restrain the officers and agents of the " Jewish Home
for Aged and Infirm," a Mount Vernon institution which has
transferred its activities to the borough of Brooklyn, from
using its corporate name so as to lead the public to believe that
both institutions are one and the same, an injunction *pendente
lite* will be granted enjoining defendant from circularizing and
advertising in such a manner as to confuse the public as to the
identity of both institutions and from holding its affairs, social
and charitable, in such a way as to deceive the public and
lead it to believe that the public affairs held by the defendant
and by the plaintiff are one and the same.

MOTION for injunction *pendente lite.*

Grover M. Moscowitz (Meier Steinbrink, of coun-
sel), for motion.

Jenks & Rogers (Almet F. Jenks, of counsel),
opposed.

DIKE, J. This is a motion for an injunction *pen-
dente lite.* Plaintiff asks for an order enjoining and
restraining the defendant, its agents and officers, from

using the name Jewish Home for Aged and Infirm, from circularizing and advertising in such a manner as to lead the public to believe that the plaintiff and the defendant institutions are one and the same; further seeking to enjoin the defendant from operating in Brooklyn, and for other relief.

The complaint sets forth that the plaintiff is a domestic corporation duly incorporated on the 10th day of August, 1907, pursuant to the provisions of the Membership Corporations Laws of the state of New York, and that the said certificate of incorporation was filed in the office of the county clerk of Kings county on the 14th day of August, 1907, under the name Brooklyn Ladies Hebrew Home for the Aged, and duly approved by the state board of charities; that thereafter the name of the plaintiff was duly changed to the Brooklyn Hebrew Home for the Aged, in 1913; that thereafter the name of the plaintiff was again changed to the Brooklyn Hebrew Home and Hospital for the Aged, and the certificate duly filed in the office of the secretary of state of New York and also in the office of the clerk of the county of Kings in March, 1918; that the purposes were that said institution be organized for the purpose of assisting Hebrew aged, poor men and women in accordance with the Hebrew dietary laws and religious customs, and give medical and surgical treatment to those aged incurables maintained in the home, and later filing a certificate extending the objects and purposes of the corporation so that it might maintain and operate a hospital in conjunction with its home. The principal office of the plaintiff corporation was set forth as being in the borough of Brooklyn, city of New York, county of Kings. The home and hospital are situated at Howard and Dumont avenues, for the purposes set forth in the certificate. Enlargements have

been made to the plant so that 450 inmates shortly will be able to be accommodated. That the defendant corporation was incorporated under the Membership Corporations Law pursuant to chapter 35 of the Consolidated Laws of 1909, under the name of Jewish Home for Aged and Infirm, on the 28th day of February, 1912, and its certificate of incorporation was filed with the county clerk of New York county on May 4, 1912. In that certificate of incorporation appears the following: " The name of the city in which the principal office of said corporation is to be located is the City and County of New York; the place where the home aforesaid is to be erected is the City of Mount Vernon, State of New York." That in the certificate from the state board of charities to the defendant, dated the 21st day of February, 1912, there is an approval of the incorporation " of the said Jewish Home for Aged and Infirm, located at Mount Vernon, New York." That on or about August, 1920, it was announced that a home was to be purchased in the Bushwick section of the borough of Brooklyn, and circulars bearing the name of the Jewish Home for Aged and Infirm were distributed.

In the voluminous affidavits submitted, plaintiff contends that there has arisen great confusion among donors and supporters of the plaintiff institution as to the identity of these institutions; and in which were cited instances of monetary gifts having been received by the defendant that were intended for the plaintiff.

The plaintiff institution is well known in the borough of Brooklyn, and some idea of its substantial activities may be gained from the fact that in the year 1920 there was paid for maintenance of that institution the sum of $65,270.76. The defendant institution has accommodations at present for twenty-five inmates.

Instances of activities on the part of the officers and managers of the defendant have been brought to the attention of the court, from which the court is asked to conclude that a system of procedure has been adopted tending to confuse the public and to divert from° the plaintiff institution that financial support which it had been led to count on in the past. Several instances were cited on the argument. The annual ball of the plaintiff institution was held on February 5, 1921, at the Brooklyn Academy of Music; on the same night the defendant institution had its dance at the Ritz-Carlton. On April 2, 1921, an auxiliary of the plaintiff held an affair at the Thirteenth Regiment Armory; on the same night the auxiliary of the defendant held its affair at the Waldorf-Astoria. The plaintiff institution instituted a dollar campaign, starting the same in August, 1920, in order to raise funds for the plaintiff institution; the defendant institution also inaugurated a dollar campaign along the same lines, the circulars and advertising being similar in style and appearance to those used by the plaintiff institution. The excerpt of the minutes of the board of trustees of the plaintiff institution shows that the dollar campaign was discussed as early as July of that year and before the defendant institution inaugurated its campaign. Other instances have been presented, such as newspaper articles descriptive of a social and charitable function of the defendant, wherein names of those identified with the plaintiff institution were included. The defendant institution and its officers cannot necessarily, from these, be charged with having instigated any such description in the newspapers. But several instances of this are cited, which obviously must have confused those reading such notices in the press. Many affidavits have been submitted in behalf of the plaintiff by

citizens who have set forth how greatly they were deceived by notices, and requests for donations.

It seems to me there is ample authority for an application of this kind; and the court has relieved in other instances by injunction where it felt that there was an unfair and a misleading use of a corporate name, and in cases, too, of organizations similar to those now being discussed in this proceeding. Such a case is *B. P. O. Elks* v. *Improved B. P. O. Elks,* 205 N. Y. 459, and *Salvation Army in U. S.* v. *American Salvation Army,* 135 App. Div. 268, where the plaintiff was restrained from using its corporate name " or a name so nearly resembling it as to be calculated to deceive the public and the friends, patrons and adherents  *  *  * ; leading the public to believe that the defendant is the plaintiff for the purpose of securing credit or subscriptions." And later, " While its object in organizing may have been entirely laudable, its assumption of the physical attributes of its predecessor in the field, with slight and colorable differences, was obviously an imitation and calculated, if not deliberately designed, to deceive."

The defendant institution was a Mount Vernon institution and it has transferred its activities now to the borough of Brooklyn. The defendant institution may have entered the broader field of activity in the borough of Brooklyn from the most laudable designs. There can be no monopoly in charitable activities. No one should be deprived of the luxury of doing good. But it is, it seems to me, a proper question always as to the methods. If the methods are improper or unfair, to the harm and detriment of others with established rights, even if the results are meritorious, such methods should be discouraged.

There is a vast field in this great borough of

Brooklyn for just such activities as are indicated in the certificates of incorporation of both of these parties. To maintain institutions of this kind requires the most exhaustive and exhausting labor on the part of those interested. There should be no limit to wise and generous development of such activities. There may always be, however, proper criticism where deserved, if the methods pursued to effect such development tend to curtail such laudable activities and cripple the financial standing of such a beneficent institution.

The defendant institution transferred its activities from a distant county of the state to this borough. It came into a territory where plaintiff's institution had long labored in the particular field of care of the aged and infirm Jewish people, and it would seem, inasmuch as the work of both institutions was substantially along the same lines, the aims of both were almost identical, and the people it was desired to assist were of the same faith, that the defendant would seek to co-operate with the institution so fully established here; but instead of help it appears there has been harm, a spirit of rivalry instead of a spirit of generous co-operation in charitable endeavor.

I therefore feel, although this is an extraordinary remedy that is sought, that the plaintiff has shown justification in seeking the relief asked for. The defendant institution has many supporters who unquestionably will be anxious and willing to continue to support the beneficent aims of that institution, and I feel confident that the great majority of such supporters will be willing to free themselves from any criticism of unfair methods. Therefore, I grant the motion for an order enjoining and restraining the defendant, its agents and officers from using the name Jewish Home for Aged and Infirm; from circularizing and advertising in such a manner as to confuse

the public as to the identity of these institutions; from holding its affairs, social and charitable, in such a way as to deceive the public and to lead them to believe that the public affairs held by the defendant and the plaintiff are one and the same. This relief I grant *pendente lite,* feeling that there will undoubtedly be an early trial of the issues raised by the pleadings herein. Submit order on notice. No costs.

Motion granted.