The bill in this cause is filed by the Supreme Lodge of the World, Loyal Order of Moose, and also one of the local New Jersey Moose lodges, against the Independent, Benevolent and Protective Order of Moose, Liberty Lodge, No. 4, and some of the individuals comprising that lodge, to restrain the use by the defendants of the name "Moose," the Moose emblem, ritual and titles of officers, which are similar to the emblem, ritual and titles of officers of the complainant lodges.
It appears from the testimony and other evidence submitted in the cause that in 1922 there was organized in Newark, New Jersey, a lodge known as the Independent, Benevolent and Protective Order of Moose, Liberty Lodge, No. 4. That lodge was composed entirely of members of the colored race. An action was then instituted by the present complainants against that lodge, and the cause was heard by Vice-Chancellor Ingersoll, sitting in this court, and resulted in a decree against the defendant, in accordance with the prayer of the bill. This decree prohibited the use of the name "Moose," the Moose emblem, ritual and other insignia by the defendant lodge.
Immediately thereafter some of the members of the original lodge organized another lodge known as Independent, Benevolent and Protective Order of Reindeer, and other members of the original lodge, which was a defendant in the action referred to, proceeded to organize the lodge, which is now the defendant in this cause. This defendant obtained its charter from the supreme lodge of the same name, which is chartered under the laws of the State of New York. It appears by the charter of the defendant lodge that the name "Moose" is a part of the name employed by the defendant organization; that the emblem of the defendant lodge is an almost exact replica of the emblem of the complainant organization; that the titles of the officers of the defendant lodge are practically the same as those of the complainant organization. It also appears from the testimony that the defendant lodge has never really functioned as a lodge, because *Page 600 
at the time the preliminary injunction in this cause was issued sufficient funds had not been gotten together to purchase from the supreme lodge, the parent lodge, the necessary rituals and paraphernalia. One of the officers of the defendant lodge, however, testified that it was the intention of the defendants to use the badge, a replica of which appears on the charter, and to use the ritual and other paraphernalia to be supplied to it by the supreme lodge. It appears from the testimony on both sides that the members of the complainant organizations and the members of the defendant lodge are known generally as "Moose." Testimony and exhibits have also been offered on behalf of the complainants indicating the purpose of that organization, and the ritual, badges and paraphernalia used by them, and it appears also that the complainants adopted the name "Moose" as a component part of their corporate name in 1881, and have used it continually since that time, and, as applied to lodges, exclusively in this state until the organization in 1922 of the lodge which was enjoined by this court as above mentioned; that there are now over six hundred thousand members of Moose lodges organized under the jurisdiction of the complainant Supreme Lodge of the World, and that these members are commonly known as "Moose," and that the subordinate lodges exist all over the United States and in other parts of the world; that they have become well and favorably known to the public by the name "Moose," and have established a large good-will and enjoy the respect and confidence of the general public under that name; that they own millions of dollars' worth of property, both real and personal, and that there is established as one of the subsidiary organizations of this order an institution at Moose Heart, Indiana, which is benevolent in its character, and that all members of the Moose lodge are entitled to the benefits of that organization. Complainant lodges and their associates are composed entirely of members of the Caucasian race, while the members of the defendant lodge are, in fact, composed entirely of members of the colored race, although it is claimed there is nothing in *Page 601 
the constitution of the defendant organization to prevent a member of the Caucasian race becoming a member of this lodge.
I feel that in this case I am bound by the decision of Vice-Chancellor Ingersoll in the suit above referred to, in which he advised a decree in favor of the complainants. Exactly the same issues were there involved as here, and, except for the fact that it appears from the file in that case that the decree was entered by default, I should not feel called upon to cite any further authorities. The issues in the instant case, however, were fully tried out before me in open court.
In Cape May Yacht Club v. Cape May Yacht and Country Club,81 N.J. Eq. 454, it was held that a corporation, though not formed for pecuniary profits, may have the unfair use of its name enjoined to protect its property rights — that is, its corporate entity, membership, its popularity and influence, and all that goes with them, of which the name is merely the badge. I think it is clearly established by the evidence in this case that the complainants have extensive property rights, good-will, c., because of which they are entitled to the protection of this court. The same principle here involved has been frequently before our courts. See International Silver Co. v. Rogers,66 N.J. Eq. 119; State Council, Jr. O.U.A.M. of New Jersey, v.National Council, Jr. O.U.A.M. of North America, 71 N.J. Eq. 433,
as examples of the application of this principle
A case on all fours with the case sub judice, the decision in which I believe to represent the general law in this country, isBenevolent and Protective Order of Elks v. Improved,Benevolent and Protective Order of Elks of the World, 205 N.Y. 459; 98 N.E. Rep. 756. In that case the Benevolent and Protective Order of Elks sought to restrain the defendant, Improved, Benevolent and Protective Order of Elks of the World, from the use of its name, or any name of which "Elks" formed a component part. The defendants were members of the colored race, and the court held that the complainant was entitled to an injunction restraining the defendants from the use of what the court considered a misleading *Page 602 
corporate name, and also held that the fact that the complainant was not carrying on any trade or industrial or financial business which could be injuriously affected by the use of such name, was immaterial.
The following pertinent language is used in that opinion:
"The chief practical effect of the present judgment is to compel the defendant to adopt another name which contains no reference to the `Elks.' Its organization is not interfered with, and it may continue to exercise all its functions just as before. If its members desire the name of an animal there is a long list of beasts, birds and fishes which have not yet been appropriated for such a purpose. It is only the virtual misrepresentation that they are `Elks' that is complained of here."
This language may be very easly paraphrased to apply to the case sub judice. I am of the opinion that the complainants are entitled to an injunction in accordance with the prayer of the bill, and I will advise a decree in accordance with these conclusions.