## DURO CO. v. DURO CO.

Circuit Court of Appeals, Third Circuit.
June .20, 1928.

No. 3706.

Trade-marks and trade-names and unfair competition ⬡➾61—Manufacturer of internal combustion engines, using trade-mark "Duro," could restrain use thereof by manufacturer of spark plugs, where purchasers might be misled.

Corporation building up large business, among other things, in small internal combustion engines, where electrical current is not available, and using "Duro" as its trade-mark generally, *held* entitled to restrain defendant manufacturer of spark plugs, though making no internal combustion engines, from using the label "Duro," in view of probability that purchasers might be misled into believing that spark plugs were manufactured by complainant corporation.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit by the Duro Company, an Ohio corporation, against the Duro Company, a New Jersey corporation. Decree for complainant [27 F.(2d) 336], and defendant appeals. Affirmed.

Thomas G. Haight, of Jersey City, N. J., and C. C. Cousins, of New York City, for appellant.

H. A. Toulmin, Sr., and H. A. Toulmin, Jr., both of Dayton, Ohio, and H. C. Minton, Jr., and N. T. Rogers, both of Trenton, N. J., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the Duro Company, a corporation of Ohio, filed a bill against the Duro Company, a corporation of New Jersey, charging infringement of trade-mark and unfair competition. After hearing, that court granted the injunction prayed for, whereupon the New Jersey corporation took this appeal.

The case is so satisfactorily discussed by the court below (27 F.[2d] 336) that we might well limit ourselves to adopting its opinion and affirming the case thereon, but, in view of the earnest contention made by opposing counsel, we add our own independent reasons in support of such affirmance. The plaintiff or its predecessors has built up a large business, *inter alia*, in small internal combustion engines for farm, village, and mine use, where electric current is not available. Since January, 1916, it has used "Duro" as its trade-mark generally, and in New Jersey since the latter part of that year. Since 1916 it has sold $12,000,000 of its product and spent in advertising and sales expenses some $2,000,000. As a result it has gained extensive and valuable good will in the coupling of the word "Duro" with its products, which are sold by garages, hardware stores, and like places.

In the plaintiff's small internal combustion engines the spark plug is the vital, all-important, electric agency, and while such spark plugs are not made by the plaintiff itself, yet, as the engine is furnished to purchasers, it is equipped with a spark plug of approved excellence. The defendants make no internal combustion engines, but do make a spark plug, which they label "Duro," and which is. adapted, by its standardized size, pattern, and screw threads, to be used as a replacement on Duro engines of the Ohio company's make. As the goods of both companies are sold by the same class of dealers, it is quite clear that the owner of a Duro engine might well assume that a spark plug, marked "Duro" and furnished by the same dealer as his Duro engine, was a replacement made by the maker of the Duro engine; and if so misled into purchase, and the spark plug proved unsatisfactory, the impairment of good will resulting therefrom would fall upon the maker of the Duro engine.

So far as decisive elements are concerned, we think the case falls within the reasoning of this court in Wall v. Rolls-Royce, 4 F.(2d) 333, where we said:

"Seeing, then, that by putting his individual business under the name 'Rolls-Royce,' and utilizing its trade reputation and earned good will, Wall could greatly benefit himself, the converse of the proposition follows: That this veiling of his business under the name 'Rolls-Royce' might, and indeed almost surely would, injure the real Rolls-Royce industries, and substantially detract from their good will and fair name. It is true those

companies made automobiles and aeroplanes, and Wall sold radio tubes, and no one could think, when he bought a radio tube, he was buying an automobile or an aeroplane. But that is not the test and gist of this case. Electricity is one of the vital elements in automobile and aeroplane construction, and, having built up a trade name and fame in two articles of which electrical appliances were all important factors, what would more naturally come to the mind of a man with a radio tube in his receiving set, on which was the name 'Rolls-Royce', with nothing else to indicate its origin, than for him to suppose that the Rolls-Royce Company had extended its high grade of electric product to the new, electric-using radio art as well. And if this Rolls-Royce radio tube proved unsatisfactory, it would sow in his mind at once an undermining and distrust of the excellence of product which the words 'Rolls-Royce' had hitherto stood for."

Without discussing the other phases involved, all of which, as we have said, have been passed upon in either the exhaustive opinion of the trial judge or by ourselves, we confine ourselves to affirming the decree below, but, under the surrounding circumstances, limit the accounting from the date of the filing of the bill.