STANDARD OIL CO. OF NEW MEXICO, Inc., v. STANDARD OIL CO. OF CALIFORNIA.
No. 543.

Circuit Court of Appeals, Tenth Circuit.
March 21, 1932.

F. A. Catron, of Santa Fé, N. M., for appellant.

E. R. Wright of Santa Fé, N. M. (Miley, Hoffman, Williams & France, of Oklahoma City, Okl., and Donovan N. Hoover, of Santa Fé, N. M., on the brief), for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

PHILLIPS, Circuit Judge.

Standard Oil Company of California brought this suit against the Standard Oil Company of New Mexico, Inc., to enjoin the latter from using the corporate name, the Standard Oil Company of New Mexico, Inc., or any corporate name which contains the words "Standard Oil Company" or words so similar thereto in sound or appearance as to lead to confusion or uncertainty, or to use the word "Standard" in connection with the manufacture or sale of petroleum products.

Plaintiff is a corporation organized under the laws of Utah, and in February, 1928, it was duly authorized to transact business in New Mexico as a foreign corporation. Defendant was organized as a corporation on September 27, 1929, under the laws of New Mexico.

Both plaintiff and defendant are authorized under their respective articles of incorporation to engage generally in the business of producing, manufacturing, and marketing petroleum and petroleum products, including gasoline, motor oil, and specialty products derived from petroleum. Continuously since it was authorized to transact business in New Mexico, plaintiff has engaged in the business of distributing and selling petroleum and petroleum products both at wholesale and retail in such state. It has a capital investment in New Mexico of approximately one-half million dollars, and its gross annual sales exceed one and one-half million dollars; and it has built up a large and profitable business and good-will under its corporate name.

In 1923 the Standard Oil Company of Indiana registered with the secretary of state of New Mexico the word "Standard" as a trade-mark to be used in connection with its business of distributing and selling petroleum. In October, 1929, it assigned such trade-mark to plaintiff. The Standard Oil Company of Indiana has not qualified to do business in New Mexico and its business in such state has been limited to interstate transactions.

Since commencing business in New Mexico, plaintiff has used the word "Standard" as descriptive of its products, and the words

"Standard," "Standard Oil," "Standard Oil Products," and "Standard Oil Company Products" in connection with the sale and distribution of its products and in the transaction of its business in New Mexico; and such words have come to be understood by the public to mean the products of plaintiff, and have acquired what is commonly called a secondary meaning.

On September 27, 1929, one Harry Starr of New York City caused defendant to be incorporated. At or about the same time he caused other companies to be incorporated in Virginia, West Virginia, Maine, Rhode Island, North Dakota, Alabama, and South Carolina. In each instance the corporate name adopted consisted of the words "Standard Oil Company of," followed by the name of the state within which the corporation was organized. The articles of incorporation of each of such corporations were substantially alike. In organizing defendant, Starr was acting as attorney and agent of Jacob J. Smith, Stanley Andt, and Leonard E. Finkle of New York City, and E. Walter Hudson and Jacob J. Shilfer of Philadelphia. Smith and Hudson have been directors and officers of defendant since October 16, 1929.

The incorporation of defendant was a part of a general plan and scheme of Starr and those whom he represented to organize in various states corporations with names similar to Standard Oil Companies already incorporated in such states.

In March, 1930, defendant filed in the office of the State Corporation Commission of New Mexico a certificate showing the payment of its capital stock, the holding of its first annual meeting, and the election of its board of directors and executive officers.

The trial court entered a decree enjoining defendant from using in the state of New Mexico, except for the purpose of changing its corporate name, the name " 'The Standard Oil Company of New Mexico, Inc.,' or any * * * name containing the words 'Standard,' 'Standard Oil,' or any similar name, or any variation thereof, or any other words so * * * similar in sound or appearance to the corporate name of" plaintiff "as to lead to uncertainty and confusion."

Defendant has appealed.

Section 1, c. 112, N. M. Laws 1927, in providing what a certificate of incorporation shall set forth, in part reads as follows:

"No name shall be assumed already in use by another existing corporation of this State, or which in the judgment of the State Corporation Commission, is so nearly similar thereto as to be misleading or confusing."

Counsel for defendant contends that the State Corporation Commission of New Mexico, when it granted a charter to defendant, necessarily passed on the question of whether the name adopted by defendant was so similar to the name of plaintiff as to be misleading or confusing; and that the decision of the commission is final and conclusive. The statute does not undertake to make it so. The authorities generally hold that such a decision is not conclusive on the courts. General Film Co. of Mo. v. General Film Co. of Me. (C. C. A. 8) 237 F. 64; Drugs Consolidated, Inc. v. Drug Incorporated (Del. Ch.) 144 A. 656; Diamond Drill Contracting Co. v. International Diamond Drill Contracting Co., 106 Wash. 72, 179 P. 120; Knights of the Maccabees of the World v. Searle, 75 Neb. 285, 106 N. W. 448; People ex rel. Columbia Chemical Co. v. O'Brien, 101 App. Div. 296, 91 N. Y. S. 649; Material Men's Merc. Ass'n v. New York Material Men's Merc. Ass'n, 169 App. Div. 843, 155 N. Y. S. 706; Fletcher Cyc. Corporations (Per Ed.) vol. 6, § 2426.

We are of the opinion that such a decision by an administrative officer or board does not preclude the courts from granting injunctive relief, if the requisite grounds therefor exist.

Counsel for defendant asserts that the mere adoption of a name similar to that of plaintiff, until defendant has engaged in business thereunder, does not constitute unfair competition warranting injunctive relief by a court of equity.

This is not strictly a suit to enjoin unfair competition. It is in the nature of a bill quia timet to enjoin the threatened unlawful use of a corporate name. Defendant's articles of incorporation indicate that it proposes to engage in New Mexico in the same line of business as plaintiff is now carrying on in such state, and that defendant purposes to use in connection therewith the words "Standard," "Standard Oil" or "Standard Oil Company."

Equity aids the vigilant, not those who slumber on their rights. Etting v. Marx's Executor (C. C. Va.) 4 F. 673, 681; Frank v. Butler County (C. C. A. 8) 139 F. 119, 124; Hammond v. Hopkins, 143 U. S. 224, 274, 12 S. Ct. 418, 36 L. Ed. 134; St. Paul F. & M. Ins. Co. v. Freeman, 80 Mont. 266, 260 P. 124, 128; Standard Oil Co. of N. Y. v. Standard Oil Co. of Me. (D. C. Me.) 38

F.(2d) 677; Pomeroy's Equity Jurisprudence (4th Ed.) vol. 1, § 418.

It was the duty of plaintiff to act before the rights of innocent third persons (such, for example, as purchasers of stock in defendant) had intervened. Edison Storage Battery Co. v. Edison Automobile Co., 67 N. J. Eq. 44, 56 A. 861, 864, 865; Cleveland Opera Co. v. Cleveland Civic Opera Ass'n, 22 Ohio App. 400, 154 N. E. 352, 355; Fletcher Cyc. Corporations, (Per Ed.) vol. 6, § 2440.

Furthermore, since defendant has not commenced the transaction of business, it will be a simple matter for it to change its corporate name, and the decree will result in little inconvenience to it. On the other hand, defendant would be greatly inconvenienced by such a decree rendered after it had actually engaged in manufacturing and marketing its products under the names "Standard," "Standard Oil," or "Standard Oil Company."

A court of equity will act by injunction to prevent a threatened wrongful act which appears to be imminent, if irreparable injury will result therefrom. Standard Oil Co. of Me. v. Standard Oil Co. of N. Y. (C. C. A. 1) 45 F.(2d) 309, 310, 311; United Drug Co. v. Parodney (D. C. N. Y.) 24 F.(2d) 577; Cleveland Opera Co. v. Cleveland Civic Opera Ass'n, supra; Guardian Assur. Co. v. Garrett, 40 Dom. L. Rep. 455; Fletcher Cyc. Corporations (Per Ed.,) vol. 6, § 2440. "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." Pennsylvania v. West Virginia, 262 U. S. 553, 593, 43 S. Ct. 658, 663, 67 L. Ed. 1117, 32 A. L. R. 300.

Neither reason nor authority required plaintiff to wait until the threatened injury had occurred.

Counsel for defendant urges that the names of defendant and plaintiff are not so similar as to make it probable that the public will be confused or deceived. The trial court found and the evidence fully established that "Standard," "Standard Oil," and "Standard Oil Products" have acquired a secondary meaning in New Mexico, and have come to mean the goods and products of plaintiff. The only difference between the corporate names is the last word thereof, one being "New Mexico" and the other "California." "Standard Oil Company" are the dominant words in such names. Under such a state of facts there can be no doubt that, if defendant were permitted to engage in the petroleum business under its corporate name, third persons would deal with defendant thinking they were dealing with plaintiff and would purchase the goods and products of defendant in the belief that such were the goods and products of plaintiff; and the identity of plaintiff would be confused and destroyed.

Finally, counsel for defendant maintains that the injunction was too broad; and that it should have been limited to the use of such words in the branch of the petroleum business in which plaintiff is now engaged. He asserts that plaintiff is engaged solely in the sale of petroleum and petroleum products; and that defendant might engage in the production of petroleum or the manufacture of petroleum products, or both, without coming into competition with plaintiff. It seems very doubtful that defendant could engage in the *manufacture* of petroleum products in New Mexico under the name "Standard Oil Company" without coming into competition with plaintiff. It is conceivable that defendant might engage in the *production* of petroleum without coming into actual market competition with plaintiff in the sale of petroleum products.

The petroleum industry is divided into three principal branches: Production, manufacture, and distribution and sale. A company engaged in all three branches is known as an integrated company. The trend in the industry is toward integrated operation. Plaintiff's charter authorizes it to engage in all the branches of such industry. While it is now engaged only in the distribution and sale of petroleum products, it has the right at any time to expand its business so as to include the other branches of such industry. Should plaintiff later engage in production and manufacture, it of course will want to do so under its present corporate name.

Counsel for defendant bottoms his contention largely on the case of Borden Ice Cream Co. v. Borden's Condensed Milk Co. (C. C. A. 7) 201 F. 510, 514. In that case the milk company had never made or sold commercial ice cream, which was the business for which the ice cream company was incorporated, and the two companies had not come into actual market competition. For that reason the court held the milk company was not entitled to an injunction to restrain the use by the ice cream company of the word "Borden" in its corporate name. In the opinion, the court said:

"It is true that the name of a person may become so associated with his goods or busi-

ness that another person of the same or a similar name engaging in the same business will not be allowed to use even his own name, without affirmatively distinguishing his goods or business.

"The secondary meaning of a name, however, has no legal significance, unless the two persons make or deal in the same kind of goods. Clearly the appellants here could make gloves, or plows, or cutlery under the name 'Borden' without infringing upon any property right of the old company. If that is true, they can make anything under the name 'Borden' which the appellee has not already made and offered to the public."

Recent, well considered cases upon the law of unfair competition have expanded the narrow rule announced in the Borden Case to an extent that leads us to conclude that the Borden Case is out of harmony with the modern law of unfair competition. See cases cited note 1, infra.

A corporate name is in the nature of a property right. American Steel Foundries v. Robertson, 269 U. S. 372, 380, 381, 46 S. Ct. 160, 70 L. Ed. 317; Standard Oil Co. of N. Y. v. Standard Oil Co. of Me. (D. C. Me.) 38 F.(2d) 677, 679; Iowa Auto Market v. Auto Market & Exchange, 197 Iowa, 420, 197 N. W. 321; Newby v. Oregon Cent. R. Co., F. Cas. No. 10,144; Daughters of Isabella No. 1 v. National Order, Daughters of Isabella, 83 Conn. 679, 78 A. 333, 335, Ann. Cas. 1912A, 822; Fletcher Cyc. Corporations, (Per. Ed.) vol. 6, § 2415.

By the prior lawful entry into a field under a legally adopted name, and by prior appropriation and use thereof, a corporation acquires a right to such name which the law will recognize and protect. American Steel Foundries v. Robertson, 269 U. S. 372, 381, 46 S. Ct. 160, 70 L. Ed. 317; National Circle, Daughters of Isabella v. National Order of Daughters of Isabella (C. C. A. 2) 270 F. 723, 732; American Waltham Watch Co. v. United States Watch Co., 173 Mass. 85, 53 N. E. 141, 43 L. R. A. 826, 73 Am. St. Rep. 263; Wheeler Syndicate v. Wheeler, 99 Misc. Rep. 289, 163 N. Y. S. 817; Henry Mfg. Co. v. Henry Screen Mfg. Co., 204 App. Div. 27, 197 N. Y. S. 444; Rosenburg v. Fremont Undertaking Co., 63 Wash. 52, 114 P. 886; Federal Securities Co. v. Federal Securities Corp., 129 Or. 375, 276 P. 1100, 1102, 66 A. L. R. 934.

There is an important distinction between a corporate name and an individual name in respect to the manner of their acquisition. A corporation acquires its name by choice and need not select a name identical with or similar to one already appropriated by a senior corporation, while an individual's name is thrust upon him.

Generally speaking, a trade-mark is applicable to the vendible commodity to which it is affixed, and a trade name to a business and its good-will. American Steel Foundries v. Robertson, supra.

The general purpose of the law of unfair competition is to prevent one person from passing off his goods or his business as the goods or business of another. American Steel Foundries v. Robertson, supra.

A business institution by handling only goods of high quality, by fair dealing, by judicious and honest advertising, by skillful management, and by prompt payment of its financial obligations over a period of years will establish a business reputation or good-will which, though intangible, is of great value and is entitled to protection the same as any other property right.

A corporation may establish its corporate name as a trade name; it may build up a fine reputation for the high quality of its products, for financial responsibility, and for business integrity and fair dealing in the field within which it transacts its business. When another corporation enters that field for the purpose of engaging in a similar business and appropriates the same name or one so similar as to cause confusion in the minds of the public, its ability to injure the senior corporation is not limited solely to competition in the sale of its products. Any act committed by the junior corporation which would cause damage to the credit, or reputation for integrity and fair dealing of the senior corporation, if committed by the latter, would injure it if the public, because of the similarity of the names, should attribute such act to the senior corporation.

Likewise, from the standpoint of the public, a third person might be induced to sell to, extend credit to, or otherwise deal with the junior corporation believing he was dealing with the senior.

In Newby v. Oregon Cent. R. Co., supra, the court said:

"Under the law, the corporate name is a necessary element of the corporation's existence. * * * Any act which produces confusion or uncertainty concerning this name is well calculated to injuriously affect the identity and business of a corporation. And as a matter of fact, in some degree at least, the natural and necessary consequence

of the wrongful appropriation of a corporate name, is to injure the business and rights of the corporation by destroying or confusing its identity."

This language was quoted with approval by the Supreme Court in American Steel Foundries v. Robertson, supra.

█ A corporate name or trade name identifies a corporation; it also identifies its business and the goods or services which it sells or renders. If a junior corporation appropriates such name or a name so similar thereto as to lead to confusion, it appropriates the reputation that goes with it and removes that reputation beyond the power of the owner to protect. Unless the junior's business is so foreign to the senior's as to insure against the public confusing the two, it is unlawful. Yale Electric Corp. v. Robertson (C. C. A. 2) 26 F.(2d) 972; Del Monte Special Food Co. v. California Packing Corp. (C. C. A. 9) 34 F.(2d) 774; Certain-Teed Products Corp. v. Philadelphia & Suburban Mortg. Guarantee Co. (C. C. A. 3) 49 F.(2d) 114; and cases cited note 1, infra.

█ There was a time in the history of the law of unfair competition when it was a debatable question whether a merchant's good-will indicated by his trade name or trade-mark extended beyond such goods as he sold [Yale Elec. Corp. v. Robertson (C. C. A. 2) 26 F.(2d) 972–973], but it is now well settled that the law of unfair competition is not confined to cases of actual market competition. If one fraudulently sells his goods or his services or his securities as those of another, injury may result to the latter although he is not engaged in the manufacture or sale of like goods. Where one passes off his goods, his services, or his business as the goods, services, or business of another, equity will intervene to protect the good-will and business reputation of the latter from any injury liable to be caused thereby. See cases note 1.

NOTE 1. In Akron-Overland Tire Co. v. Willys-Overland Co. (C. C. A. 3) 273 F. 674 (See also Id. [D. C.] 268 F. 151), the court enjoined the Akron Company from using the word "Overland" in the business of retreading automobile tires and in the sale of its stock and securities. The plaintiff, Willys Company, was engaged solely in the business of manufacturing automobiles.

In Wall v. Rolls-Royce of America, Inc., (C. C. A. 3) 4 F.(2d) 333, the court enjoined Wall from using the name "Rolls-Royce Tube Company" in carrying on the business of selling radio tubes. The plaintiff, Rolls-Royce Company, was an American subsidiary of the British Rolls-Royce Company, and was engaged in the manufacture, distribution, and sale of automobiles, aeroplanes, and parts therefor.

In Long's Hat Stores Corporation v. Long's Clothes, Inc., 224 App. Div. 497, 231 N. Y. S. 107, the

Indeed, the right to protection against the unlawful or unfair use of a corporate name extends to all corporations of whatever na-

court enjoined the use of the word "Long" by the defendant, although it sold a different class of merchandise from that sold by plaintiff.

In Duro Co. v. Duro Co. (C. C. A. 3) 27 F.(2d) 339, the court enjoined the use of the word "Duro" on sparkplugs. The plaintiff was the owner of the mark "Duro" and was engaged in the business of manufacturing electrical apparatus such as switches, solnoids, electric motors, electric driven pumps, and small internal combustion engines, but not spark-plugs.

In Yale Elec. Corp. v. Robertson (C. C. A. 2) 26 F.(2d) 972; Id. (D. C.) 21 F.(2d) 467, the court held that Yale & Towne Manufacturing Co., engaged in the manufacturing of many kinds of hardware, especially locks and keys but not electric flash-lights, was entitled to protection against the use of its mark "Yale" by the Yale Electric Corporation on flash-lights manufactured by the latter.

In Peninsular Chemical Co. v. Levinson (C. C. A. 6) 247 F. 658, the Peninsular Company, owner of the trade name and mark "Penslar," was engaged in the sale and distribution of drugstore supplies and drug sundries, not including cigars, through 3,500 retail agencies known as Penslar Drug Stores. The court enjoined Levinson from using the word "Penslar" in the manufacture of cigars.

In Vogue Co. v. Thompson-Hudson Co. (C. C. A. 6) 300 F. 509, the court enjoined the defendant from using the word "Vogue" and the letter "V" as a label on hats, in similitude of the word "Vogue" and the letter "V" used by plaintiff as the name and mark of a style magazine which it published.

In Imperial Cotto Sales Co. v. N. K. Fairbanks Co., 50 App. D. C. 250, 270 F. 686, the Fairbanks Company had used the word "Cottolene" for many years as a trademark to designate a cooking fat made from cotton seed oil and oleostearine. The court held the sales company was not entitled to register the word "Cottolene" as a mark for an animal food meal composed principally of cotton seed.

In Aunt Jemima Mills Co. v. Rigney & Co. (C. C. A. 2) 247 F. 407, L. R. A. 1918C, 1039, the Mills Company and its predecessors originated a trade-mark consisting of the words "Aunt Jemima's" accompanying a picture of a laughing negress, and used it in marketing and advertising its self-rising flour. Thereafter Rigney & Company registered the same mark to be used for syrups and sugar creams. The court enjoined the use of such mark by Rigney & Company on syrups and sugar creams.

In Del Monte Special Food Co. v. California Packing Corp. (C. C. A. 9) 34 F.(2d) 774, 775, the packing company had been engaged for many years in the production and sale of various food products under the mark "Del Monte Brand." It did not manufacture or sell oleomargarine. The court enjoined the food company from selling oleomargarine marked with the words "Del Monte Brand," saying:

"The injury to the appellee by the use of the Del Monte Brand by the appellant does not result from preventing sale by appellee of oleomargarine of its own, but from a representation to the public that it produces a product which it does not in fact produce and over which it has no control. Its reputation for quality is therefore placed to some extent in the hands of a corporation who owes it no allegiance and has no concern in maintaining ·the high reputation established by ·the appellee, and who may utilize that reputation to sell the public an inferior production. Thus every effort made by the appellee to increase the volume and variety of its products and maintain its high standard of quality by its systematic and expensive advertising campaign and by care in the preparation of its products redound to the benefit of the appellant, which does not contribute in any manner to the expenditures involved in this vast undertaking, and whose only motive for the adoption of the same 'brand' is to

ture, including corporations not organized for pecuniary profit. See cases note 2.

Furthermore, the New Mexico statute prohibits a junior corporation from adopting the name of a senior corporation, or one so similar thereto as to be misleading or confusing, irrespective of whether the business of the two corporations is the same. In Grand Rapids Furniture Co. v. Grand Rapids Furniture Shops, 221 Mich. 548, 191 N. W. 939, the court enjoined the use of the name "Grand Rapids Furniture Shops" solely on the ground that it violated the Michigan statute which prohibits the use of a name so similar that it will lead to confusion or deception. In Glucose Sugar Refining Co. v. American Glucose Sugar Refining Co. (N.

J. Ch.) 56 A. 861, the complainant was held entitled to base its claim for injunctive relief either upon the New Jersey statute, from which the New Mexico statute was taken, or "upon the inequitable conduct of the defendant in assuming the name of the complainant." See, also, Drugs Consolidated, Inc., v. Drugs Incorporated (Del. Ch.) 144 A. 656.

■ We therefore conclude that the rule for which counsel for defendant contends is too narrow, and that the right to protection exists in all cases where confusion as to the identities of two corporations is likely to cause injury to the credit or business reputation of the senior corporation, or to the reputation of its merchandise, or to its market therefor, and to the public who may deal with the junior corporation believing it is the senior.

■ Here defendant is about to engage in the petroleum industry, in which plaintiff is already engaged, under the same name as plaintiff except as to the last word. The

---

get the advantage of appellee's name, reputation, and good will. The law of unfair competition has resulted from the application of a simple proposition to the extension and modern development of manufacturing and merchandising. That principle may be expressed in the language used by the various courts when dealing with the subject of unfair competition, as follows: 'That nobody has any right to represent his goods as the goods of somebody else.' "

In Wisconsin Elec. Co. v. Dumore (C. C. A. 6) 35 F.(2d) 555, the Dumore Company was engaged in the manufacture of electric motors, polishers, grinders, grills, cloth cutters, hair driers, shoe driers, and drink mixers. Since 1913 it had used thereon its mark "Dumore." Such mark had acquired a secondary meaning. The electric company was engaged in the manufacture of washing machines. There was no market competition between the parties. The court enjoined the electric company from marking its machines with the word "Dumore."

The British-American Tobacco Co., Ltd., v. British-American Cigar Stores Co. (C. C. A. 2) 211 F. 933, Ann. Cas. 1915B, 363, the tobacco company was engaged in growing tobacco, and in manufacturing and selling at wholesale tobacco, cigars, cigarettes, and snuff in England and the United States. The cigar company was engaged in the sale of cigars at retail through a chain of cigar stores in the United States. The court enjoined the latter from using the words "British-American."

In Walter v. Ashton, [1902] 2 Chan. Div. 282, plaintiff was the proprietor of "The Times" a newspaper, and engaged in the production and sale of literary publications under the name of "Times," but not in the sale of bicycles. The court enjoined Ashton, who was selling bicycles under the name "Times Bicycles," from representing that the bicycles offered by him were in fact offered by the proprietors of "The Times," or that he was carrying on a business as a department of, or in connection with such paper, or in any way holding out that "The Times" was the proprietor of his business.

See, also, Eastman Co. v. Kodak Co., 15 Rep. Pat. Cases 105; American Products Co. v. American Products Co. (D. C. Mich.) 42 F.(2d) 488; Finchley, Inc., v. Finchly Co., Inc. (D. C. Md.) 40 F.(2d) 736; Armour & Co. v. Master Tire & Rubber Co. (D. C. Ohio) 34 F.(2d) 201; De Nobili Cigar Co. v. F. G. Nobile Cigar Co. (C. C. A. 1) 56 F.(2d) 324.

NOTE 2. In the following cases, plaintiff was a benevolent or fraternal association: Talbot v. Independent Order of Owls (C. C. A. 3) 220 F. 660; Grand Lodge, K. P. of North and South America v. Grand Lodge, K. P., 174 Ala. 395, 56 So. 963; Most Worshipful Prince Hall Grand Lodge v. Most Worshipful Hiram Grand Lodge, 85 Colo. 17, 273 P. 648;

Daughters of Isabella No. 1 v. National Order, Daughters of Isabella, 83 Conn. 679, 78 A. 333, Ann. Cas. 1912A, 822; International Committee Young Women's Christian Ass'n v. Young Women's Christian Ass'n of Chicago, 194 Ill. 194, 62 N. E. 551, 56 L. R. A. 888; Supreme Lodge of the World, Loyal Order of Moose v. Paramount Progressive Order of Moose, 224 Mo. App. 276, 26 S.W.(2d) 826; Supreme Lodge of the World, Loyal Order of Moose v. Independent Benevolent and Protective Order of Moose, 98 N. J. Eq. 598, 131 A. 219; Benevolent & Protective Order of Elks v. Improved Benevolent & Protective Order of Elks of the World, 205 N. Y. 459, 98 N. E. 756, L. R. A. 1915B, 1074, Ann. Cas. 1913E, 639; Benevolent & Protective Order of Elks of U. S. A. v. Improved Benevolent & Protective Order of Elks of the World, 122 Tenn. 141, 118 S. W. 389; Liberty Life Assurance Society v. Heralds of Liberty of Delaware, 15 Del. Ch. 369, 138 A. 634; National Circle, Daughters of Isabella v. National Order of Daughters of Isabella (C. C. A. 2) 270 F. 723.

In the following case, plaintiff was a patriotic society: Society of the War of 1812 v. Society of War of 1812, 46 App. Div. 568, 62 N. Y. S. 355.

In the following case, plaintiff was a social club: Cape May Yacht Club v. Cape May Yacht & Country Club, 81 N. J. Eq. 454, 86 A. 972, 974.

In the following cases, plaintiff was an educational institution: Columbia Grammar School v. Clawson, 120 Misc. Rep. 841, 200 N. Y. S. 768; Trustees of Columbia University v. Axenfeld, 136 Misc. Rep. 831, 241 N. Y. S. 4.

In the following cases, plaintiff was a religious society: Brooklyn Hebrew Home & Hospital for the Aged v. Jewish Home for Aged & Infirm, 117 Misc. Rep. 347, 192 N. Y. S. 301; Polish National Catholic Church of Holy Mother of the Rosary v. Diocese of Buffalo (Sup.) 171 N. Y. S. 401; Salvation Army in U. S. v. American Salvation Army, 135 App. Div. 268, 120 N. Y. S. 471.

In Cape May Yacht Club v. Cape May Yacht & Country Club, supra, the court said:

"A court of equity will lend its aid to restrain the unfair use of the name of a corporation formed not for pecuniary profit, to protect its property rights, i. e., the corporate entity, membership, its popularity and influence, and all that goes with them, of which the name is merely the badge."

dominant words in both names are "Standard Oil." Such words have acquired a secondary meaning. We have no doubt that confusion will result even with defendant engaged only in the production of petroleum and plaintiff in the sale of petroleum products. The confusion would be all the greater with defendant engaged in the manufacture or sale of petroleum products.

"Standard Oil" has been associated with the petroleum industry for many years. Standard Companies, including plaintiff, have built up a fine reputation and good-will. With a practically unlimited field of distinctive names open to it for choice, defendant selected the name "Standard Oil Company." It could have had but one object, namely, to improperly obtain advantage of the good-will associated with the name "Standard Oil" and to take and commercially use as its own a commercial asset that belongs to another, to the detriment of that other and the public.

Under the circumstances, we are of the opinion that plaintiff was entitled to the broad protection which the decree gave it.

The costs will be assessed against defendant and the decree affirmed.